## MICHAELSON ET AL. *v.* UNITED STATES EX REL. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

## SANDEFUR *v.* CANOE CREEK COAL COMPANY.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

Nos. 246 and 232. Argued April 9, 10, 1924.—Decided October 20, 1924.

1. The Clayton Act, October 15, 1914, §§ 21, 22, c. 323, 38 Stat. 738, provides that any person who shall wilfully disobey any writ, etc., of any District Court of the United States or court of the District of Columbia, by doing any act or thing therein or thereby forbidden, if of such character as to constitute also a criminal offense under any statute of the United States or law of the State in which committed, shall be proceeded against as in the statute

provided; that in all such cases the trial may be by the court, or, upon demand of the accused, by a jury, and shall conform, as near as may be, to the practice in criminal cases prosecuted by indictment or upon information, the accused, upon conviction, to be punished by fine or imprisonment, or both, the fine to be paid to the United States or to the complainant or other party injured by the act constituting the contempt, or, where several are so damaged, be apportioned among them as the court may direct. Concerning this, *Held*:

(*a*) That the proceeding contemplated is for the prosecution of criminal contempts exclusively, the discretion given the court regarding the payment of fine to private complainants being incidental and subordinate to the dominating purpose of the proceeding, which is to vindicate the authority of the court and punish the act of disobedience as a public wrong. P. 64.

(*b*) A proceeding for criminal contempt, committed by disobedience of an injunction, unlike the proceeding for civil contempt, is between the public and the defendant, is an independent proceeding at law, and no part of the original cause. *Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418. *Id.*

(*c*) The courts of the United States, when called into existence and vested with jurisdiction over any subject, at once become possessed of the power to punish for contempt, which is inherent in all courts and essential to the administration of justice. P. 65.

(*d*) In so far as concerns the lower federal courts, although the attributes which inhere in this power and are inseparable from it can neither be abrogated nor rendered practically inoperative, the power, within limits not precisely defined, may be regulated by Congress. P. 66.

(*e*) The above statutory provision for a jury trial, applicable only where the act or thing complained of is also a crime in the ordinary sense, and not interfering with the power to deal summarily with contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor purporting to extend to cases of failure or refusal to comply with decrees requiring affirmative action, does not invade the powers of the courts as intended by the Constitution, and is within the regulatory power of Congress. *Id.*

2. Section 20 of the Clayton Act, concerning the granting of injunctions "in any case between an employer and employees" involving or growing out of a dispute concerning terms or conditions of employment, includes such cases in which the employers are railroad companies. P. 68.

3. Railroad employees who, in a dispute over wages, go out on strike in defiance of a decision of the Railroad Labor Board, and, in furtherance of the strike, conspire together and commit unlawful acts in restraint of the railroad's interstate commerce, remain " employees " of the railroad in the sense of § 20 of the Clayton Act. P. 67.

4. In such a case, existence of the status of employment at the time when acts constituting a contempt are committed is not necessary in order to bring into operation the provision for jury trial made by § 22. P. 69.

5. Abusive language, assembling in numbers, picketing, and other acts by strikers, for the purpose of intimidating and preventing men desirous of securing employment with a railway company, *held prima facie* violations of a penal statute of Wisconsin, (R. S., 1921, § 4466c). *Id.*

6. Section 22 of the Clayton Act, although reading that the trial " may " be by the court, or, upon demand of the accused, by jury, is to be construed, in the light of its history and purpose, as giving the accused the absolute right of trial by jury. P. 70.

291 Fed. 940 (No. 246), reversed.

THE first case was a certiorari to review a judgment of the Circuit Court of Appeals affirming a judgment of the District Court which adjudged the petitioners guilty of contempt, after a trial in which their request for a jury was denied.

The second case presents a question certified by the Circuit Court of Appeals, which is set forth in the opinion, *post,* p. 70.

*Mr. Donald R. Richberg* and *Mr. Jackson H. Ralston,* with whom *Mr. John A. Cadigan* and *Mr. Peter B. Cadigan* were on the brief, for petitioners in No. 246.

I. This is a case of criminal contempt. If it were a case of " civil contempt," the proceedings, being interlocutory, would have terminated with the conclusion of the original case, which was dismissed on motion of complainant. *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418.

The United States is named as complainant in the present case by order of court.

Irrespective of the guilt of the defendants, it appears clear that the lower court proceeded to punish them for criminal offenses and to impose fines, not for the benefit of the complainant, but, in the language of this Court in the case last cited, " the sentence is punitive to vindicate the authority of the court." See *Stearns* v. *Marr,* 181 N. Y. 463; *In re Nevitt,* 117 Fed. 448.

The judgments in this case were plainly not remedial nor compensatory.

A brief consideration of the nature of crimes in general, as distinguished from civil legal wrongs, will make abundantly clear that the acts for which petitioners were ordered punished constitute criminal, not civil contempt. *Reg.* v. *Paget,* 3 F. & F. 29, note; Austin, Juris., § 17; 1 Bishop, Crim. Law, § 32; Beale, 21 Harv. Law Rev. 1; *Ex parte Kearney,* 7 Wheat. 38; *New Orleans* v. *Steamship Co.,* 20 Wall. 387; *In re Shull,* 221 Mo. 623.

That contempt of court is a criminal offense is also recognized in innumerable decisions of the inferior federal courts. See 5 Fed. Stat. Ann., 2d ed., 1033, note; *Fischer* v. *Hayes,* 6 Fed. 63; *Castner* v. *Pocahontas Co.,* 117 Fed. 184; *In re Ellerbe,* 13 Fed. 530; *Bullock Co.* v. *Westinghouse Co.,* 129 Fed. 105; *Anargyros* v. *Anargyros & Co.,* 191 Fed. 208; *United States* v. *Jacobi,* 26 Fed. Cas. No. 15,460.

It has been repeatedly said by the Attorneys General of the United States that " contempt of court is an offense against the United States " within the President's pardoning power. 3 Ops. Atty. Gen. 622; 4 *id.* 458; 5 *id.* 579; 19 *id.* 476.

The court below confused: (1) the inherent power of an equity court to furnish a remedy to the complainant and to enforce its decree for that purpose, and (2) the distinct (and not inherent) power of the court to punish for a criminal offense. There is no " inherent power " in a chancellor to punish criminal offenders. It is necessary

to have clearly in mind the important distinction between a proceeding in civil contempt, which is a part of an equity proceeding, and a proceeding in criminal contempt, which is an action at law—a prosecution by the United States for a criminal offense.

II. Congress has power to make a trial by jury mandatory.

The inferior federal courts are creatures of congressional legislation, and legislative limitations upon their jurisdiction and its exercise are valid. The first Congress, in which sat many of the framers of the Constitution and other contemporaries of the Convention, made provision as to the exercise of the power of punishment for contempt. Judiciary Act, 1789, § 17. The abuses of Judge Peck and the failure by one vote to impeach him (see Peck's Trial) resulted in a congressional amendment to § 17 (Act of 1831), whereby Congress limited the power of the inferior federal courts to punish for contempt. This limitation was never declared unconstitutional, although it has been before this Court on more than one occasion. *Ex parte Robinson,* 19 Wall. 505; *Toledo Newspaper Co.* v. *United States,* 247 U. S. 402; *In re Neagle,* 135 U. S. 1.

In *Ex parte Robinson, supra,* a case which is later than *Martin* v. *Hunter's Lessee,* 1 Wheat. 304, referring to this very limitation of § 17, effected by the Act of 1831, this Court, per Mr. Justice Field, held: "The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power [to punish for contempts] . . . But the power has been limited and defined by the act of Congress of March 2, 1831."

No stronger expression of the principle here contended for can be found than is embodied in a decision by Mr. Chief Justice Marshall, *Ex parte Bollman,* 4 Cr. 93. See Peck's Trial, p. 294; *United States* v. *Hudson,* 7 Cr. 32, 33;

*Ex parte Cabrera,* 1 Wash. C. C. 232; *Turner* v. *Bank of North America,* 4 Dall. 8; *Livingston* v. *Van Ingen,* 1 Paine, 45; *Cary* v. *Curtis,* 3 How. 236; *Sheldon* v. *Sill,* 8 How. 441; *Holmes* v. *Goldsmith,* 147 U S. 150.

That § 1 of Art. III of the Constitution does not mean that Congress, having established inferior courts, is powerless to limit their jurisdiction, is very clearly shown by the provisions of the first Judiciary Act and the history of its adoption. Warren, New Light on the History of the Federal Judiciary Act of 1789, 37 Harv. Law Rev. 49. And see *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265; 1 Works of James Monroe, Monroe to Madison, Aug. 12, 1789.

The lack of authority to issue a writ of mandamus in the absence of express statutory grant of power is well recognized. *In re Massachusetts,* 197 U. S. 482; *Knapp* v. *Lake Shore & M. S. Ry. Co.,* 197 U. S. 536.

The authority of the federal courts to issue writs of *habeas corpus* is derived from the acts of Congress, first, limiting the power, and later, by successive legislative enactments broadening the power.

In England and in most Colonial admiralty courts at the time of the adoption of the Constitution and for many years prior, admiralty jurisdiction did not extend to seizure under the laws of impost, navigation or trade, and accordingly such cases were tried in a common law court by a jury. The Judiciary Act of 1789, however, gave to the District Courts " exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including seizures under laws of impost, navigation or trade." Thus, the first Congress, having established an inferior court did not permit parties to exercise the right recognized for many years before the Constitution and at the time of its adoption of trial by jury in a certain class of cases. This portion of the Judiciary Act which has been before the Court on many occasions has never been held unconstitutional.

There is no inherent judicial power in a court of equity to punish criminal contempts. [Citing articles by F. Solly–Flood, Q. C. in Vol 3 N. S. Royal Historical Society, (1886), and by John Charles Fox, 24 Law Quar. Rev. (1908), and reviewing numerous cases and authorities there cited, and adding others, to show that, from 38 Hen. III (1253) down to 1736, even direct contempts were punished through ordinary criminal procedure, and not summarily by the Chancellor.] It seems that *Dodd's Case,* Sand. Chan. Ord. 538 (1736) is the earliest where a court of chancery ever committed a stranger for contempt, and that was a case of a direct affront to the court. In 1742 Lord Hardwicke, in punishing a direct contempt to the chancery court (*Re Read and Huggonson and the St. James' Evening Post,* 2 Atk. 469) treated as new summary punishment without the usual processes followed in criminal cases.

Not only Chief Justice Wilmot, in his undelivered opinion in *Rex* v. *Almon,* Wilmot's Notes, 243 (1765); but also Blackstone, 4 Comm. 285, and Hawkins, 2 Pl. Crown, c. 22, § 36, fail to cite authority for their conclusions that the courts were empowered to deal summarily with direct contempts. See *Gompers* v. *United States,* 233 U. S. 604; Beale, Harv. Law Rev., Jan. 1908.

The court for the trial of criminal contempts may be constituted by act of Congress as a tribunal consisting of a judge and jury. 8 Am. & Eng. Encyc. Law, 2d ed., p. 22; *In re Choate,* 18 Civ. Pro. Rep. (N. Y.) 186; *People* v. *Barrett,* 18 *id.* 230; affd. 121 N. Y. 678; 15 Corp. Juris, 717; *People* v. *Molineux,* 168 N. Y. 264; *Mascall* v. *Commissioners,* 122 Ill. 620.

III. It is the duty of Congress to provide for trial by jury in criminal contempt proceedings. Const. Art. III, § 2; Sixth Amendment; *Schick* v. *United States,* 195 U. S. 68. Distinguishing *In re Debs,* 158 U. S. 564, and *Eilenbecker* v. *Plymouth County,* 134 U. S. 31.

IV. The petitioners were "employees" within the meaning of the Clayton Act.

A strike or lockout does not terminate the relationship of employer and employee. 31 Yale Law. Jour. 321; *Farmers' Loan & Trust Co.* v. *Northern Pac. R. R. Co.,* 60 Fed. 803; *Delaware, L. & W. R. R. Co.* v. *Bowns,* 58 N. Y. 573; *Longshore Co.* v. *Howell,* 26 Ore. 527; *Arthur* v. *Oakes,* 63 Fed. 310; *Uden* v. *Schaefer,* 110 Wash. 391; *Iron Molders' Union* v. *Allis-Chalmers Co.,* 166 Fed. 45; *Kemp* v. *Division No. 241,* 255 Ill. 213; *Rex* v. *Neilson,* 44 N. S. 488.

A very good example of the continuance of the relationship of employer and employee in connection with railroads, despite the cessation of work and payment of wages, is found in the rules governing the work of the shop-craft employees affecting all important railroads and particularly the one concerned in the present case. See Rules 27 and 28, promulgated by the Railroad Labor Board, Decisions U. S. R. R. Labor Board, vol. II. pp. 576, 577. Rule 28 is particularly impressive as showing that men laid off on account of reduction in forces are still regarded as employees because otherwise the carrier would be violating the law in furnishing them with passes. Int. Com. Act, § 1 (7), § 22.

The purpose of the Clayton Act is to deal with industrial relations in a broad way, and it would be destructive of the legislative intention to construe the words used in such a technical sense as to make it possible for private persons to defeat the effective operation of the act. (See *Duplex Printing Co.* v. *Deering,* 254 U. S. 443, dissenting opinion.)

The force of this contention is doubled when one considers the provisions of the Transportation Act in connection with the provisions of the Clayton Act. The Transportation Act provides for the adjustment of disputes between carriers and employees in order to prevent

interruptions of interstate commerce, and provides for representation of employees through their organizations. If, when a dispute arises between a carrier and its employees resulting in the cessation of work, it should be held that the workers concerned can no longer be regarded as employees, then the provision for their representation through their organizations would be nullified. The purpose of the act would be defeated. The Transportation Act recognizes that those men who are trained to perform the services necessary for the operation of the railroads are to be regarded as railway employees who may be organized in associations to promote their common interests, the membership of which cannot be arbitrarily diminished by the action of management in temporarily refusing to furnish work. In like manner, the membership of these organizations is not diminished by the refusal of groups of members to perform work under nonacceptable conditions. The organized employees must be regarded as employees whether all the members are actively engaged in rendering service or not. See construction of word " employees " in *Duplex Case, supra.*

V. Trial by jury is an absolute right under the provisions of the Clayton Act.

*Mr. James W. Henson* and *Mr. Jackson H. Ralston,* with whom *Mr. N. P. Taylor* was on the brief, for Sandefur.

This is clearly a proceeding to punish for criminal contempt. The facts certified by the Court of Appeals show that after the injunction was granted the Canoe Creek Coal Company filed affidavits tending to show that certain named parties, including Sandefur, had violated the injunction by the use of violence and threats of violence against some of the miners that worked for that company; that the acts charged against him and the others were criminal offenses under the laws of Kentucky; that he was tried before the court, found guilty, the court holding the proceedings to be punitive, and the sentence was

that he pay one hundred dollars into court for the use and benefit of the United States.

This and other courts have often distinguished between criminal and civil contempts. *Merchants' Stock & Grain Co.* v. *Board of Trade,* 201 Fed. 20; *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418.

The judgment of the District Court was in no sense remedial, for the Coal Company had suffered no loss and hence received none of the fine imposed. The sentence was punitive to vindicate the authority of the court and was ordered paid into court for the use and benefit of the United States as any other fine in criminal cases.

It is conceded that the courts of this country have held in a general way that courts had the inherent power to hear and punish summarily direct and indirect contempts, but these decisions were generally rendered in the absence of any statute regulating the power or procedure. An investigation, however, will disclose, as we believe, that for hundreds of years even direct contempts were uniformly dealt with by information, presentment, or indictment, and trial by jury. This appears to have been the procedure from the time of the Magna Carta down to the death of Henry V. After this it appears that a practice grew up for the courts without a jury to deal with and punish summarily offenders who had committed some direct contempt or who had refused to obey a decree of the court. It is submitted that it is very doubtful whether, when the Constitution of the United States was written, there was any recognized " inherent " authority in a court of equity to punish summarily for indirect contempts. Many of our courts have held that the authority to try and punish persons guilty of contempt was inherent in the court, but in practically every instance to which our attention has been called they have followed legislative direction upon the subject.

All federal courts, except the Supreme Court, are creatures of Congress and subject to its will. In their creation

they were clothed with certain powers and duties; but these may be and are changed from time to time.

Congress is given, by Art. I, § 8, cl. 18, of the Constitution, the power " to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the Government of the United States, or in any department or officer thereof."

When the Constitution provided that the judicial power should be vested in one Supreme Court " and in such inferior courts as the Congress may from time to time ordain and establish " (Art. III, §1), there was no limitation fixing the exact portion of the judicial power which should be vested in the judge as a constituent part of the court. Certainly, since the inferior federal courts were to be such courts as Congress might establish, there was ample power conferred upon Congress to direct in what manner and with what constituent parts such inferior courts should be established and function. Therefore, how can it be contended that the Constitution prohibits Congress from establishing as the " court " for the trial of a certain class of cases a tribunal consisting of a judge and jury? See *In re Choate*, 18 Civ. Pro. Rep. (N. Y.) 186; *People* v. *Barrett*, 18 *id*. 230; affd. 121 N. Y. 678; *People* v. *Molineux*, 168 N. Y. 264; *Mascall* v. *Commissioners*, 122 Ill. 620.

Furthermore, Congress was under express mandate to carry out the purpose expressed in the same article that " the trial of all crimes  .  .  .  shall be by jury "—a purpose reiterated in the Sixth Amendment.

Again, may it not be suggested that it is properly the function of the legislative department rather than the judicial department to determine what are " criminal prosecutions? "

If Congress had established a District Court to consist of three judges of whom a majority must agree, in order to render judgment, would it not be an unlawful act for

one judge to exercise alone any of the powers of the court? Is it not equally unlawful, when an inferior court is constituted by act of Congress as consisting of a judge and jury, for the judge alone to attempt to exercise the power conferred upon that court?

It may be conceded that, in the absence of ample legislative authority, all courts, from the necessity of the case, have an inherent power to protect themselves and enforce their judgments. Still, the question remains, can the law-making power regulate or define the procedure to be taken by courts in such cases?

No court, so far as we are informed, has ever denied the right of trial by jury where a statute provided for such a trial, except the District Court in *In re Atchison,* 284 Fed. 604; and in *Michaelson* v. *United States,* 291 Fed. 940. Legislative power to grant the jury trial has been conceded in many cases. *Arnold* v. *Commonwealth,* 80 Ky. 300; *In re Gitkin,* 164 Fed. 71; *Kirk* v. *Milwaukee Co.,* 26 Fed. 501; *E : parte Morris,* 28 Oh. C. C. 611; *State* v. *Hazeltine,* 82 Wash. 81; *In re Oldham,* 89 N. C. 23; *Atwell* v. *United States,* 162 Fed. 97; *State* v. *Galloway,* 5 Cold. (Tenn.) 326; *State* v. *Frew,* 24 W. Va. 416; *State* v. *Morrill,* 16 Ark. 384; *In re Gorham,* 129 N. C. 481; *Nichols* v. *Superior Court,* 130 Mich. 187.

This whole question of the power of Congress is set at rest by *Ex parte Robinson,* 19 Wall. 505. Cf. *Kline* v. *Burke Constr. Co.,* 260 U. S. 226; *Martin* v. *Hunter's Lessee,* 1 Wheat. 326, 338.

The provisions of the Clayton Act in question grant an absolute right to trial by jury and the act is constitutional.

The jury may pass upon the facts going to make up guilt or innocence.

If it is held that Congress was without power to enact this legislation granting a trial by jury, then that lack of power must be arrived at by implication, as the organic

law is silent on the question. Can it be contended that an unrestrained power will be inferred or implied in such cases?

The manifest purpose of the Clayton Act was to assist in solving many of the perplexing questions that frequently grow out of the engagements of these particular classes (employer and employee) which compose the business life of our country. This Court has recognized and affirmed the validity of some of the most material parts of the act under consideration. *American Steel Foundries* v. *Tri-City Council,* 257 U. S. 184; *Duplex Printing Co.* v. *Deering,* 254 U. S. 443; *In re Atchison,* 284 Fed. 604. *In re Debs,* 158 U. S. 594, distinguished.

The court in *Patton* v. *United States,* 288 Fed. 812, fully recognized the validity of the act in granting a jury trial in a case like this. So, *United States* v. *Taliaferro,* 290 Fed. 214; *Taliaferro* v. *United States,* 290 Fed. 906.

*Mr. Edward Porter Humphrey,* with whom *Mr. William Wait Crawford* and *Mr. Churchhill Humphrey* were on the brief, for Canoe Creek Coal Company.

Congress cannot invade the province of the judiciary. *Kilbourn* v. *Thompson,* 103 U. S. 168; *Massachusetts* v. *Mellon,* 262 U. S. 447.

A District Court of the United States has inherent and constitutional power to act in matters of contempt, without a jury, and the provision of the Clayton Act, permitting trial by jury in such cases, is invalid because, if upheld, it would materially impair the court's power in this respect. Clayton Act, 38 Stat. 738; Const., Art. III, § 1; Art. III, § 2, cl. 1, 2; Jud. Code, § 268; Rev. Stats. § 725; *Ex parte Terry,* 128 U. S. 289; *In re Nevitt,* 117 Fed. 448; *Eilenbecker* v. *Plymouth County,* 134 U. S. 31; *Interstate Commerce Comm.* v. *Brimson,* 154 U. S. 447; *In re Debs,* 158 U. S. 564; *Michaelson* v. *United States,* 291 Fed. 940; *In re Atchison,* 284 Fed. 604; *Hale* v. *State,* 55 Oh. St. 210; *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418;

*Kline* v. *Burke Constr. Co.,* 260 U. S. 226; *Farrell* v. *Waterman S. S. Co.,* 291 Fed. 604.

There is no right of trial by jury in a contempt proceeding under the Constitution, because it is not the trial of a crime or a criminal prosecution, and the court can act without a jury in such matter, regardless of whether the proceeding be classified as a civil or criminal contempt. Const., Art. III, § 2, cl. 3; Sixth Amendment; Seventh Amendment; Clayton Act, 38 Stat. 738; *Myers* v. *United States,* 264 U. S. 95; *In re Debs,* 158 U. S. 564; *United States* v. *Debs,* 64 Fed. 724; *McDougall* v. *Sheridan,* 23 Idaho, 191; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642; *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418; *Merchants' Stock & Grain Co.* v. *Board of Trade,* 201 Fed. 20; *United States* v. *Eaton,* 144 U. S. 687.

*Mr. Richard L. Kennedy,* with whom *Mr. William T. Faricy, Mr. Lyman T. Powell* and *Mr. John S. Sprowls* were on the brief, for respondent in No. 246.

I. The decision of the trial court denying the petitioners a jury trial upon the ground that the acts charged did not constitute criminal offenses under any statute of the United States or under the laws of Wisconsin and were, therefore, not within the Clayton Act, was correct.

We agree that these prosecutions were for criminal contempt as distinguished from civil contempt. We do not agree that they are ordinary " criminal prosecutions." On the contrary, they are " sui generis " and have been so recognized by this Court for many years. *Bessette* v. *Conkey Co.,* 194 U. S. 324; *Myers* v. *United States,* 264 U. S. 95.

The distinction between civil and criminal contempt results from a consideration of whether the punishment sought to be imposed is for the purpose of vindicating the dignity and authority of the court and for the benefit of the public generally, or is for the benefit of the op-

posing party in the action. *Bessette* v. *Conkey Co., supra;* *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418.

It is not a determinative factor that the acts charged constituted a violation of a state or federal statute. An act might be a criminal contempt without constituting a violation of any state or federal statute. Conversely, the act might be a clear violation of a state or federal criminal statute, or both, and yet be a civil rather than a criminal contempt.

A concession that the acts charged constituted criminal contempts does not militate against the contention that the acts charged did not constitute a criminal offense under state or federal statutes and that the Clayton Act was, therefore, inapplicable.

Counsel have not cited any federal statute of which the acts charged constitute a violation, and we believe there is none.

Section 4466a, Wis. Rev. Stats., would be applicable only if petitioners had been charged with maliciously doing the things prohibited by the statute. *Aikens* v. *Wisconsin,* 195 U. S. 194; *Allis-Chalmers Co.* v. *Iron Molders' Union,* 150 Fed. 155; *Randall* v. *Lonstorf,* 126 Wis. 147; *White* v. *White,* 132 Wis. 121; *Schultz* v. *State,* 135 Wis. 644; *Schultz* v. *Frankfort Ins. Co.,* 151 Wis. 537; *Trade Press Pub. Co.* v. *Milwaukee Typographical Union,* 180 Wis. 449.

To constitute a violation of § 4466c, Wis. Rev. Stats., the accused must either have hindered or prevented another from engaging in or continuing in any lawful work or employment, or attempted so to hinder or prevent, etc. The petitioners were not charged with having done either of these two things. They were charged with having been " assembled for the purpose of intimidating and preventing men, desirous of securing employment with said company, from entering upon such employment." In other words, they were charged with having

gotten together for the purpose of violating § 4466c but not with having violated it.

II. Under § 22 of the Clayton Act a jury trial is not mandatory, even in contempt cases falling within the provisions of § 21.

Not only do the terms of § 22 appear to justify this contention, but the history of the proceedings leading to its enactment and the state of the law at the time appear to establish that fact. Inherent power in the courts to punish for contempt, without a jury, had been recognized by a long line of decisions of this Court. Innumerable decisions of the state courts and of the federal courts, other than this Court, were to the same effect.

A construction of § 22 which would nullify this rule should not be adopted, unless the language of the section will bear no other construction.

An examination of the Congressional Record covering the period when the Clayton Act and antecedent measures were being urged upon Congress, indicates that Congress did not intend to make trial by jury compulsory, but to leave it in the discretion of the court, and so used in § 22 the word " may " advisedly.

Where an amendment to a pending measure is offered, which tends to broaden its scope, refusal of the legislative body to adopt an amendment indicates an intention to restrict the application of the statute. *Connole* v. *Norfolk & W. Ry. Co.,* 216 Fed. 823.

When the majority prepared and reported its bill, it deliberately rejected the word " shall " contained in the bills which had been before it, to make a trial by jury compulsory, and inserted in lieu of it the permissive word " may ".

The Court, in construing these sections, will assume that Congress intelligently made this change, and particularly that it heeded the suggestions, in this respect, so often made in the decisions, for the purpose of avoid-

ing constitutional doubts and a conflict with the courts. *Lincoln* v. *United States*, 202 U. S. 484; *In re Debs*, 158 U. S. 564.

To say that this section is merely declaratory of the common law is not at all fatal to the act, because, as we understand the decisions in *Duplex Printing Co.* v. *Deering*, 254 U. S. 443, and *American Steel Foundries* v. *Tri-City Council*, 257 U. S. 184, the Court so construed § 20 of this same act, and decided that Congress had introduced no new principle, but that the section was merely declaratory of what had been the best practice, always, and that Congress was merely seeking to stabilize a rule of action and render it uniform.

III. The petitioners were not entitled to a jury trial under §§ 20, 21 and 22 of the Clayton Act, because the relationship of employer and employee did not exist between the respondent and the petitioners after July 1, 1922, when they went out on the strike of the Shop Crafts Unions, because of (a) the legal status of the respondent, and (b) that of the petitioners, as former employees of a common carrier engaged in interstate commerce. *Wilson* v. *New*, 243 U. S. 332, 352, 353. See *Duplex Printing Co.* v. *Deering*, 254 U. S. 443, 470; *American Steel Foundries* v. *Tri-City Council*, 257 U. S. 184, 202.

The petitioners were not employees but " former employees." *Canoe Creek Coal Co.* v. *Christinson*, 281 Fed. 559, 561.

Attention is invited to a resolution of the United States Railroad Labor Board, in which it is stated, in substance, that the six organizations comprising the Federated Shop Crafts, had notified the Board that the members of the organization, " are no longer employees of the railroads, under the jurisdiction of the Railroad Labor Board or subject to the application of the Transportation Act."

The suggestion that the provisions of the Transportation Act regarding the adjustment of disputes between

railroads and their employees would be nullified if strikers were not regarded as employees, would appear to be completely answered so far as the petitioners are concerned by the finding of the Circuit Court of Appeals that the strike in question was an "unlawful strike."

In *Duplex Printing Co.* v. *Deering,* 254 U. S. 443, it is held that the Clayton Act, while permitting members of labor organizations to carry out the legitimate objects thereof, does not authorize "unlawful" strikes. *Hitchman Coal Co.* v. *Mitchell,* 245 U. S. 229; *Eagle Glass Co.* v. *Rowe,* 245 U. S. 275; *American Steel Foundries* v. *Tri-City Council,* 257 U. S. 184; *Truax* v. *Corrigan,* 257 U. S. 312; *United Mine Workers* v. *Coronado Coal Co.,* 259 U. S. 344.

The petitioners were members of the nation-wide organization involved in *United States* v. *Railway Employees' Dept.,* 283 Fed. 479; 286 Fed. 228; 290 Fed. 978.

Where an organization of strikers, as such, deliberately carries on a strike in an unlawful manner and resorts to the criminal methods adopted by the organization of which petitioners were members, the relationship of employer and employee has been terminated.

IV. The so-called strike of the shop-craft unions was a controversy with or a strike against the Labor Board as an instrumentality of our National Government, and is to be classed with the insurrection of the Boston policemen.

To establish the exemption or privilege under § 20, the issue must be a dispute concerning the terms or conditions of employment. *Duplex Printing Co.* v. *Deering,* 254 U. S. 443; *United States* v. *Railway Employees' Dept.,* 290 Fed. 978.

The legal status of the Railroad Labor Board, and the effect of its decisions, were established in *Pennsylvania R. R. Co.* v. *Labor Board,* 261 U. S. 72.

V. The petitioners' demand for a jury trial was rightly denied because §§ 21 and 22 of the Clayton Act, in providing for a trial by jury, are unconstitutional.

The functions of government under our system are apportioned among three coördinate branches. No one branch should be permitted to encroach upon the authority of another. Petitioners' argument would result in making Congress supreme. See dissenting opinion in *United States* v. *Midwest Oil Co.,* 236 U. S. 459, 510, 511; *Massachusetts* v. *Mellon,* 262 U. S. 447, 488; *Martin* v. *Hunter's Lessee,* 1 Wheat. 304, 327–330. Cf. *Cary* v. *Curtis,* 3 How. 235, 245.

While Art. III, § 1, of the Constitution specifically refers by name only to the Supreme Court and to this extent makes a distinction between such court and the inferior federal courts, petitioners' argument would apply to all the federal courts, including the Supreme Court, as the Constitution provides that " The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish." It would, therefore, appear that so far as the vesting of judicial power is concerned, there is no distinction between the Supreme Court and the inferior federal courts.

The constitutional convention, in vesting the judicial power, had in mind the acquisition of additional territory and the increase of population, and realized that the number and the territorial jurisdiction of the inferior courts which might become necessary could not be determined at the time the Constitution was adopted. Therefore, Congress was empowered to establish from time to time such courts as were necessary to meet the exigencies of litigation and to fix the territorial jurisdiction of each; but the respondent submits that it was never intended that Congress should limit the judicial power of such courts when established. As stated by Story, J., in *Martin* v. *Hunter's Lessee, supra,* it was the duty of Congress to vest the whole judicial power in such courts as were established, as otherwise Congress might successively re-

fuse to vest the jurisdiction in any one class of cases enumerated in the Constitution and thereby defeat the jurisdiction as to all. Section 1 of Art. III of the Constitution, in providing that " the judges, both of the supreme and inferior courts, shall hold their offices during good behaviour, and shall, at stated times, receive for their services, a compensation, which shall not be diminished during their continuance in office," appears to make the creation of such inferior courts mandatory upon Congress.

Assuming, but not conceding, that Congress had the power in the act establishing inferior federal courts to limit their judicial power, it is submitted that when once so ordained and established, and vested with all " judicial power," it was then beyond the power of Congress to abridge or take away any of these inherent powers. Distinguishing, *Kline* v. *Burke Constr. Co.*, 260 U. S. 226. Cf. *Farrell* v. *Waterman S. S. Co.*, 291 Fed. 604.

In England, the judicial was not known as a separate power, but was, both in theory and practice, a part of the executive. The king, at the common law, by his prerogative, had the power, as chief magistrate of the nation, to erect tribunals of justice, to define their powers and duties, to create offices and appoint and remove officers and to appoint judges and limit the tenure of their office. There could be no contest between the executive and judicial power, for the whole was executive. *United States* v. *Kendall,* 26 Fed. Cas. pp. 702, 753.

The petitioners say that by § 17, Act of 1789, " Congress limited the power of the inferior federal courts to punish for contempt." *Sed vide, United States* v. *Toledo Newspaper Co.*, 220 Fed. 458, 481; affd. 237 Fed. 986; 247 U. S. 402.

Congress in passing the Act of March 2, 1831, c. 99, 4 Stat. 487, was not seeking to limit the powers of the courts but simply to define them.

The existence of inherent power in the federal courts to punish for contempt, without a jury, has been es-

tablished by a long line of decisions of this Court, viz: *United States* v. *Hudson,* 7 Cr. 32; *Martin* v. *Hunter's Lessee,* 1 Wheat. 304; *Anderson* v. *Dunn,* 6 Wheat 204; *Ex parte Robinson,* 19 Wall. 505; *Ex parte Terry,* 128 U. S. 289; *Eilenbecker* v. *Plymouth County,* 134 U. S. 31; *Interstate Commerce Comm.* v. *Brimson,* 154 U. S. 447; *In re Debs,* 158 U. S. 564; *Tinsley* v. *Anderson,* 171 U. S. 101; *Bessette* v. *Conkey Co.,* 194 U. S. 324; *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418; *Gompers* v. *United States,* 233 U. S. 604; *Toledo Newspaper Co.* v. *United States,* 247 U. S. 402; *Howat* v. *Kansas,* 258 U. S. 181.

Decisions of federal courts, other than this Court, and of the state courts, to the same effect, are too numerous to permit of citation. See 31 Cent. Dig., " Jury," §§ 63, 139; and Decennial and succeeding annual digests, " Jury," § 13 (21), § 21 (4).

In view of this array of authority, the respondent submits that the power of a court to punish for contempt, without a jury, is inherent, and being so inherent, it is essential, inseparable and inalienable. If the power to punish for contempt is one of the inherent judicial powers of the court, essential to its existence, is it not a part of the " judicial power," which, by the Constitution, was vested not only in the Supreme Court but also in the inferior courts, when once established? See *Kilbourn* v. *Thompson,* 103 U. S. 168, 190.

Mr. Justice Sutherland delivered the opinion of the Court.

These cases were argued together and will be disposed of in one opinion. The principal question presented in the *Michaelson* case, and the sole question in the *Sandefur* case, is whether the provision of the Clayton Act of October 15, 1914, c. 323, 38 Stat. 738, 739, §§ 21, 22, requiring a jury trial in certain specified kinds of contempt

is constitutional. Subordinate questions presented in the *Michaelson* case are: (a) Whether petitioners were, or whether it is necessary that they should be, " employees " within the meaning of the act, § 20; (b) whether the acts alleged to constitute the contempt were also criminal offenses under the statutes of the United States or of the State where committed; (c) whether the provision for a jury is mandatory or permissive.

The petitioners in the *Michaelson* case, were striking employees of the Chicago, St. Paul, Minneapolis & Omaha Railway Company, and, with others, were proceeded against by bill in equity for combining and conspiring to interfere with interstate commerce by picketing and the use of force and violence, etc. After a hearing, a preliminary injunction was granted. Subsequently, proceedings in contempt were instituted in the District Court, charging petitioners with sundry violations of the injunction; and a rule to show cause was issued. Upon the answer and return to the rule, petitioners applied for a jury trial under § 22 of the Clayton Act; but the District Court denied the application and proceeded without a jury. At the conclusion of the hearing, the petitioners were adjudged guilty and sentenced to pay fines in various sums, and in default of payment to stand committed to jail until such fines were paid. Thereupon the case was taken to the Circuit Court of Appeals by writ of error; and by that court the judgments were affirmed. 291 Fed. 940.

*First.* Is the provision of the Clayton Act, granting a right of trial by jury, constitutional? The court below held in the negative, on the ground that the power of a court to vindicate or enforce its decree in equity is inherent; is derived from the Constitution as a part of its judicial power; and that Congress is without constitutional authority to deprive the parties in an equity court of the right of trial by the chancellor.

If the statute now under review encroaches upon the equity jurisdiction intended by the Constitution, a grave constitutional question in respect of its validity would be presented; and it, therefore, becomes our duty, as this Court has frequently said, to construe it " if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *Panama R. R. Co.* v. *Johnson*, 264 U. S. 375.

Shortly stated, the statute provides that wilful disobedience of any lawful writ, process, order, rule, decree or command of any district court of the United States or any court of the District of Columbia by doing any act or thing forbidden, if such act or thing be of such character as to constitute also a criminal offense under any statute of the United States or law of any State in which the act is committed, shall be proceeded against as in the statute provided. In all such cases the " trial may be by the court, or, upon demand of the accused, by a jury " and " such trial shall conform, as near as may be, to the practice in criminal cases prosecuted by indictment or upon information." Upon conviction the accused is to be *punished* " by fine or imprisonment, or both," the fine to be " paid to the United States or to the complainant or other party injured by the act constituting the contempt, or may, where more than one is so damaged, be divided or apportioned among them as the court may direct."

The provision for trial by jury upon demand, as we shall presently show, is mandatory; and the question to be answered is whether it infringes any power of the courts vested by the Constitution and unalterable by congressional legislation. We first inquire whether the proceeding contemplated by the statute is for a civil or a criminal contempt. If it be the latter—since the proceeding for criminal contempt, unlike that for civil contempt, is between the public and the defendant, is an independent proceeding at law, and no part of the original cause,

*Gompers* v. *Bucks Stove & Range Co.*, 221 U. S. 418, 444-446, 451—we are at once relieved of the doubt which might otherwise arise in respect of the authority of Congress to set aside the settled rule that a suit in equity is to be tried by the chancellor without a jury unless he choose to call one as purely advisory.. We think the statute, reasonably construed, relates exclusively to criminal contempts. The act or thing charged must be of such character as also to constitute a crime. Prosecution must be in conformity with the practice in criminal cases. Upon conviction the accused is to be punished by fine or imprisonment, or both. True, the fine may be paid to the United States or to the complainant or divided among the parties injured by the act, as the court may direct; but that does not alter the essential nature of the proceeding contemplated by the statute. The discretion given the court in this respect is incidental and subordinate to the dominating purpose of the proceeding which is punitive to vindicate the authority of the court and punish the act of disobedience as a public wrong. See *Re Merchants' Stock Co., Petitioner*, 223 U. S. 639, 641; *Matter of Christensen Engineering Co.*, 194 U. S. 458, 461; *Merchants' Stock & Grain Co.* v. *Board of Trade*, 187 Fed. 398, 401; *Kreplik* v. *Couch Patents Co.*, 190 Fed. 565, 572. " If the contempt savours of criminality, and the sentence is penal, that according to the books appears to be enough." *Long Wellesley's Case*, 2 Russ. & M. 639, 667.

But it is contended that the statute materially interferes with the inherent power of the courts and is therefore invalid. That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law. It is essential to the administration of justice. The courts of the United States, when called into existence and vested with jurisdiction

over any subject, at once become possessed of the power.
So far as the inferior federal courts are concerned, how-
ever, it is not beyond the authority of Congress (*Ex parte
Robinson,* 19 Wall. 505, 510–511; *Bessette* v. *W. B. Con-
key Co.,* 194 U. S. 324, 326); but the attributes which in-
here in that power and are inseparable from it can neither
be abrogated nor rendered practically inoperative. That
it may be regulated within limits not precisely defined
may not be doubted. The statute now under review is of
the latter character. It is of narrow scope, dealing with
the single class where the act or thing constituting the
contempt is also a crime in the ordinary sense. It does
not interfere with the power to deal summarily with con-
tempts committed in the presence of the court or so near
thereto as to obstruct the administration of justice, and
is in express terms carefully limited to the cases of con-
tempt specifically defined. Neither do we think it pur-
ports to reach cases of failure or refusal to comply affirm-
atively with a decree—that is to do something which a
decree commands—which may be enforced by coercive
means or remedied by purely compensatory relief. If
the reach of the statute had extended to the cases which
are excluded a different and more serious question would
arise. But the simple question presented is, whether Con-
gress may require a trial by jury upon the demand of
the accused in an independent proceeding at law for a
criminal contempt which is also a crime. In criminal
contempts, as in criminal cases, the presumption of inno-
cence obtains. Proof of guilt must be beyond reasonable
doubt and the defendant may not be compelled to be a
witness against himself, *Gompers* v. *Bucks Stove & Range
Co., supra,* p. 444. The fundamental characteristics of
both are the same. Contempts of the kind within the
terms of the statute partake of the nature of crimes in
all essential particulars. " So truly are they crimes that
it seems to be proved that in the early law they were

punished only by the usual criminal procedure, 3 Trans-
actions of the Royal Historical Society, N. S. p. 147
(1885), and that at least in England it seems that they
still may be and preferably are tried in that way." *Gom-
pers* v. *United States,* 233 U. S. 604, 610–611. This is also
pointed out by counsel in the case of *O'Shea* v. *O'Shea
and Parnell,* L. R. 15 Prob. Div. 59, 61; and, in the course
of one of the opinions in that case, it is said (p. 64):
" The offence of the appellant [criminal contempt] is
certainly a criminal offence. I do not say that it is an
indictable offence, but, whether indictable or not, it is
a criminal offence, and it is an offence, and the only offence
that I know of, which is punishable at common law by
summary process." The proceeding is not between the
parties to the original suit but between the public and
the defendant. The only substantial difference between
such a proceeding as we have here, and a criminal prose-
cution by indictment or information is that in the latter
the act complained of is the violation of a law and in the
former the violation of a decree. In the case of the latter,
the accused has a constitutional right of trial by jury;
while in the former he has not. The statutory extension
of this constitutional right to a class of contempts which
are properly described as " criminal offences " does not,
in our opinion, invade the powers of the courts as intended
by the Constitution or violate that instrument in any
other way.

   *Second.* We come, then, to consider the reasons which,
assuming the validity of the statute, are nevertheless
urged to preclude the right to a jury trial. The first con-
tention is that petitioners were not " employees " within
the meaning of the act, because, having gone out on strike,
the relationship of employer and employee had come to an
end. The dispute out of which arose the unlawful acts
alleged in the bill was one between the employer on the
one hand and its employees on the other, respecting terms

or conditions of employment, namely, the scale of wages to be paid employees of the class to which defendants belonged. This dispute had been submitted to the Railroad Labor Board, which, after a hearing, had fixed the scale to be paid; but the defendants declined to abide by the action of the Board and went out on strike, and in furtherance thereof conspired together and committed various unlawful acts in restraint of respondent's interstate commerce. The purpose of the strike was to bring about an increase of wages. The case was obviously within the provisions of § 20, in respect of injunctions. The court below held that, while ordinarily this would be so, it was not so in this instance because, (1) the employer was a railroad company, bound to continue its operations in the public interest and therefore not on an equal footing with its employees, and (2) that, since the scale of wages had been fixed by the Railroad Labor Board, the strike, in effect, was against the Board, a governmental instrumentality, " to be classed with the insurrection of the Boston policemen." To say that railroad employees are outside the provisions of the statute, is not to construe the statute, but to engraft upon it an exception not warranted by its terms. If Congress had intended such an exception, it is fair to suppose that it would have said so affirmatively. The words of the act are plain and in terms inclusive of all classes of employment; and we find nothing in them which requires a resort to judicial construction. The reasoning of the court below really does not present a question of statutory construction, but rather an argument justifying the supposititious exception on the ground of necessity or of policy—a matter addressed to the legislative and not the judicial authority. Neither was the strike one against the Labor Board. It is a strike notwithstanding the action of the Board, but against the respondent. The policemen's strike was against a governmental employer. The Labor Board was not an employer but an arbitrator, whose determination, moreover, had only the force of

moral suasion. *Pennsylvania R. R. Co.* v. *Labor Board,*
261 U. S. 72, 84. Moreover, it is to be observed that
§§ 21 and 22, which deal with the subject of contempts, do
not contain the limitation in respect of employment con-
tained in § 20. Section 21 provides: " That *any person*
who shall willfully disobey any lawful writ, process, order,
rule, decree, or command of any district court," etc., " shall
be proceeded against for his said contempt as hereinafter
provided." Section 22 provides for a trial by jury upon
demand of the accused in all cases within the purview of
the act. Whether the general language of § 21 should be
limited by construction because it forms a part of an act
dealing with unlawful restraints and monopolies, or for
any other reason, we need not now stop to inquire. It is
enough to say that in a controversy, such as we have here,
at least, it does not require the existence of the status of
employment at the time the acts constituting the con-
tempt are committed, in order to bring into operation the
provision for a trial by jury.

We take no time to discuss the contention that the acts
alleged as constituting contempt do not also constitute
criminal offenses. According to the petition for the rule
and affidavits in support of it these consisted of abusive
language, assembling in numbers, picketing and other acts,
for the purpose of intimidating and preventing men de-
sirous of securing employment with the railway company
from entering such employment. *Prima facie,* at least,
this violated the statute of Wisconsin where the acts were
committed, R. S. 1921, § 4466c,[1] and this is enough.

---

[1] " Section 4466c. Any person who by threats, intimidation, force
or coercion of any kind shall hinder or prevent any other person from
engaging in or continuing in any lawful work or employment, either
for himself or as a wage worker, or who shall attempt to so hinder
or prevent shall be punished by fine not exceeding one hundred
dollars or by imprisonment in the county jail not more than six
months, or by both fine and imprisonment in the discretion of the
court."

Neither is it necessary to consider at length the final contention that the jury provision of the statute is not mandatory but permissive. It is mandatory. The argument to the contrary is based on the use of the permissive word " may "—" such trial may be by the court, or, upon demand of the accused, by a jury." Strictly and grammatically considered, the word " may " limits both phrases, " by the court " and " by a jury "; but to construe it as contended, in practical effect, would be to subvert the plain intent and good sense of the statute. And this is made clear by the history leading up to and accompanying the enactment, as well as the reports of the committees having the bill in charge. The Judiciary Committee of the House, in reporting the bill, said:

"The trial is by the court (1) *in case no jury be demanded by the accused,* (2) if the contempt be in the presence of the court or so near thereto as to obstruct the administration of justice, or (3) if the contempt be charged to be in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name or on behalf of the United States. *In other cases the trial is to be by jury.*" House Report, No. 613, 62d Cong., 2d sess.

The intent of Congress in adopting the provision was to give to the accused a right of trial by jury, not merely to vest authority in the judge to call a jury at his discretion. See *Supervisors* v. *United States,* 4 Wall. 435, 446–7.

The *Sandefur* case is here on certificate requesting the instruction of this Court upon the following question of law:

" Do those provisions of Section 22 of the Clayton Act which require a conviction upon a jury trial as a condition precedent to punishment for contempt, upon demand for jury in the case specified, impose a valid restriction upon the inherent judicial power of the United States District Courts?"

The facts stated in the certificate bring the case within the principle of what has already been said, and the question must be answered in the affirmative.

*No. 246 reversed and remanded to the District Court for further proceedings in conformity with this opinion.*

