Edmund Milton JAMES, Appellant,

v.

UNITED STATES of America,
Appellee.

Harold NEVERS, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 16341, 16355.

United States Court of Appeals
Eighth Circuit.

March 10, 1960.

Edward G. Springer, St. Paul, Minn., for appellants.

C. Paul Jones, Asst. U. S. Atty., St. Paul, Minn., for appellee.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

In this criminal contempt proceeding, the request of appellants Edmund Milton James and Harold Nevers for a jury trial was denied, they were tried by the court and found guilty. Pursuant to the power vested by Title 18 U.S.C.A. § 401, James was sentenced to imprisonment for 18 months and Nevers for 6 months, and judgments of conviction were entered by the trial court on June 11, 1959. A seasonable appeal was perfected by both James and Nevers, and the appeals were set for hearing on November 20, 1959. At the request of counsel for both appellants, with no objection by the United States, the cases were passed to the next session of court, beginning March 2, 1960; however, on this Court's initiative, they were given a special setting on January 25, 1960, at which time arguments were heard. The parties requested and were granted leave to file supple-

mental briefs, and the last brief was filed on February 12, 1960.

■ When the judgments were entered on June 11, 1959, the Court ordered that defendants be permitted to remain at large on the existing appearance bonds and until appeal bonds could be obtained. Apparently Nevers was enlarged on bail until October 1, 1959, when, for reasons not appearing in the record, he entered upon the service of the sentence imposed upon him. It now appears to our satisfaction that he has fully completed service of the six months sentence and has been discharged from custody. In light of this circumstance, as to Nevers, there is no longer a subject matter on which the decision of this Court could operate and there is no showing that Nevers is liable to suffer "collateral legal disadvantages in the future" by reason of his conviction.[1] See and compare, St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199; Pollard v. United States, 352 U.S. 354, 358, 77 S.Ct. 481, 1 L.Ed.2d 393; Fiswick v. United States, 329 U.S. 211, 220, 67 S.Ct. 224, 91 L.Ed. 196; United States v. Morgan, 346 U.S. 502, 512–513, 74 S.Ct. 247, 98 L.Ed. 248. The appeal in the Nevers case, No. 16,-355, is dismissed and our consideration of the contentions presented shall necessarily be limited to and have effect only upon case No. 16,341, the appeal of James, who is still enlarged on bail.

Section 401, Title 18 U.S.C.A. which empowers the courts to punish for contempt, provides:

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

"(2) Misbehavior of any of its officers in their official transactions;

1. Nevers testified to four past convictions of felonies—breaking and entering on two occasions; driving automobile with-

out owner's consent, and Dyer Act, 18 U.S.C.A. § 2311 et seq.

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

On March 24, 1959, pursuant to the procedural provisions of Rule 42(b) of the Rules of Criminal Procedure, 18 U.S. C.A., and Rule 17(g), Federal Rules of Criminal Procedure, the United States Attorney for the District of Minnesota applied to the United States District Court for a notice and order to show cause why James and Nevers should not be adjudged in contempt of court. The application, alleging conduct within the ambit of § 401(3), charged in essence that on September 20, 1958, James was duly served with a subpoena, theretofore issued by the United States District Court for the District of Minnesota, commanding him to appear as a witness in the criminal case of United States of America v. Rocco Salvatore Lupino; that on October 1, 1958, the trial of that case commenced and continued to and including October 24, 1958; and that James willfully, knowingly, and intentionally and without adequate excuse, did fail to obey said subpoena and failed to appear at any time at the trial of the Lupino case. Formal order to show cause was issued by the Court, with service upon James and Nevers and hearing was had, resulting in convictions as aforesaid.

Since James admittedly did not appear at the trial, the pivotal factual issue is whether the subpoena was served upon James, as the Government contends, or upon Nevers, which was James' primary and chief defense to the order to show cause issued herein.

To support and establish the Government's position, John A. Mortenson, who has been a deputy United States Marshal in the Minnesota District since January 15, 1940, testified positively and unequivocally that he served the subpoena on James in his place of business, Jack's Cafe, at approximately 8:20 p. m. on Saturday, September 20, 1958. In 1942, Mortenson had James in custody, and took him from the Ramsey County jail to the United States Commissioner's office for arraignment. Later, in connection with the same offense, James as a convicted prisoner, was transported by Mortenson to the federal prison at Leavenworth, Kansas. From these contacts, Mortenson testified that he knew and recognized James on the evening of September 20, 1958. Mortenson stated that he arrived at Jack's Cafe at approximately 8:10 p. m. and took a seat at the bar until James entered the tavern a short time later. Although he recognized James when he entered, Mortenson nevertheless and in accordance with his custom of "double-checking," inquired of the bartender, "That's Mr. James?", and upon receiving an affirmative answer, proceeded to where James was seated, identified himself as a deputy United States Marshal, and stated, "I have a subpoena for you." When James turned away, Mortenson touched James' hand with the subpoena and then laid it on the bar in front of him. Almost immediately James called the bartender and handed the subpoena to him; the bartender in turn brought it to Mortenson, stating "he didn't want this." It should here be observed that the manner of service of the subpoena is not in issue.

The trial court had before it official records of the office of the United States Marshal which fully substantiated Mortenson's testimony. The original of the subpoena, with the return endorsed on it, showed service on James on September 20, 1958, at 253 W. 7th Street, St. Paul, Minnesota, by delivering a copy to him [this return was filed in the official court records on September 24, 1958]; the "Deputy's Daily Log," prepared by Mortenson, reflected in detail his official activities on Saturday, September 20, 1958. This record shows that Mortenson arrived at 253 W. 7th Street at 8:10 p. m., that a subpoena was served on James, and that Mortenson departed from that address at 8:20 p. m.

James' theory was and is that this is a case of mistaken identity on the part of Mortenson, who mistook Nevers for James. Nevers testified that the subpoena was served on *him* in Jack's Cafe, under the same circumstances and at the

same hour testified to by Mortenson, but on a different date, 11 days later. According to Nevers, the service was effected during the middle of the week, apparently on the evening of Wednesday, October 1, not September 20, 1958. In this connection Nevers testified that on the morning following receipt of the subpoena, he appeared at the office of the United States District Attorney in the Court House in Minneapolis where he informed Assistant United States Attorney, Mr. Clifford Janes, that the subpoena had been erroneously served on him. The record maintained by the United States Attorney's office disclosed that it was on October 2, 1958, that Nevers appeared in that office.

James testified that he was never served with a subpoena in the Lupino case. Additionally, Mr. and Mrs. Roscoe McDonald testified that they were present in Jack's Cafe and witnessed a paper being handed to Nevers by another individual. Although they were unable to fix a month, or date, they too stated this event occurred during the middle of the week, because there were few customers in the bar.

This testimony was heard on April 2 and 3, 1959, and on May 15, 1959, the Court entered its order finding James in contempt for willful disobedience of the subpoena.

Upon motion to vacate order or for a new trial upon ground of newly discovered evidence, a second hearing was held on June 11, 1959, to take evidence of George Russell, the bartender, and one Gerald Driscoll, who claimed to have been with Nevers at the time he was served with the subpoena. On that same date, the Court reaffirmed its original findings and proceeded with sentencing.

■ Appellant James first urges that the evidence fails to support his conviction. In a criminal contempt proceeding the accused is clothed with the presumption of innocence, and the Government has the burden of proving the guilt of the alleged contemnor beyond a reasona-

ble doubt. Michaelson v. United States, 266 U.S. 42, 66, 45 S.Ct. 18, 69 L.Ed. 162; Green v. United States, 356 U.S. 165, 173–179, 78 S.Ct. 632, 2 L.Ed.2d 672; United States v. Hall, 2 Cir., 198 F.2d 726, 730, certiorari denied 345 U.S. 905, 73 S.Ct. 641, 97 L.Ed. 1341; Richardson v. United States, 8 Cir., 1959, 273 F.2d 144. We are not persuaded by the argument that the evidence fails to meet the foregoing test. To say that there was evidence from which the Court could have found that the subpoena was not served on James, is merely stating the obvious. But it is equally evident that the trial judge did not believe, and was not required to believe, defendants or their supporting witnesses. Richardson v. United States, 8 Cir., 1959, 273 F.2d 144. All of the evidence was subject to appraisal by the judge. It is almost trite to observe that he was in a far better position than we to observe the demeanor of the witnesses as they testified. As stated by the Supreme Court in Nilva v. United States, 352 U.S. 385, at page 395, 77 S.Ct. 431, at page 437, 1 L.Ed.2d 415: "It (the District Court) was the judge of his credibility and of the weight to be given his testimony."

From the trial judge's comments it is apparent he gave little credence to defendants' version of the circumstances. James and Nevers had each been convicted four times of felonies—witness Makiesky was an officer in the corporation holding the liquor license for "Jack's Cafe"; witness McDonald was a one-time felon and had worked for Makiesky; Mrs. McDonald was a former employee of Jack's Cafe; witness Driscoll, who testified he observed service on Nevers and was very sure it was on a Wednesday, had been twice convicted, and it appears that he had social and business connections with the principals in the Lupino trial. In addition, the trial court observed that on occasion, witnesses had been deliberately evasive, and, for purposes of skirting perjury, "were very careful * * * to make sure they didn't give any positiveness to their statements."

Opposed to this type of testimony, the Court had before it the unequivocal testimony of Mortenson, the return appearing on the subpoena, and the deputy's daily log, which have received our scrutiny. In addition, we find some further corroboration of the circumstances surrounding the service in the testimony of George Russell, the bartender. The foregoing evidence, coupled with the vulnerability of defendants' version of the controverted incident, furnished substantial basis for the trial court's finding that the subpoena was in fact served on James on September 20, and well bears out the trial court's observation that defendants and their witnesses "have kind of a community of interest, it's a cabal, looks to me like a little bit of a cabal; and it's not unlikely that the story of this alleged incident that took place with Nevers in the bar on a Tuesday is a cooked-up proposition."

██ Upon due consideration of the whole record, we are convinced that the trial court was completely justified in finding beyond a reasonable doubt that the subpoena was served upon James and that he willfully disobeyed the command to appear as witness in the Lupino trial.

██ Also urged upon us is the assignment that James was entitled to a jury trial, and that the court erred in denying his request therefor. Cited and quoted verbatim in defendants' brief is Rule 42 of the Rules of Criminal Procedure which deals with criminal contempt. We do not understand that this rule constitutes the authority for federal courts to punish for contempt, rather, this rule sets out procedure in contempt proceedings by providing inter alia that the defendant is entitled to a trial by jury *"in any case in which an act of Congress so provides."* (Emphasis added.)

The power or jurisdiction of a court of the United States to punish for contempt of its authority has been expressly circumscribed by Congress in order to avoid circumvention of constitutional guaranties through the means of contempt proceedings.[2] Thus Title 18 U.S.C.A. § 401 limits power to punish for contempt to three types of misbehavior. We have seen that the conduct of James falls within subsection three of that statute, and that the trial court rightfully exercised its power of punishment. Closely allied to § 401 is § 3691 of the same title, which grants to the accused contemnor the right of trial by jury when the conduct charged is that of willful disobedience of any lawful writ, process, etc., of any United States Court, and such conduct *also* constitutes a *criminal offense* under federal or state law.[3] However, the second paragraph of § 3691 provides:

> *"This section shall not apply* to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States." (Emphasis added.)

Thus, by the clear language of the statute, James was not entitled to a jury trial under § 3691 since his contempt was in disobedience of an order entered in an action prosecuted in the name of the United States. See Forrest v. United States, 9 Cir., 277 F. 873, 876, certiorari denied 258 U.S. 629, 42 S.Ct. 462, 66 L.Ed. 799, and compare, Green v. United States, 356 U.S. 165, 180, 78 S.Ct. 632, 2 L.Ed.2d 672.

2. For discussion of history and purpose of § 401 and § 3691, see Green v. United States, 356 U.S. 165, 168–173, 78 S.Ct. 632, 2 L.Ed.2d 672; Cammer v. United States, 350 U.S. 399, 403–404, 76 S.Ct. 456, 100 L.Ed. 474; Nye v. United States, 313 U.S. 33, 45–52, 61 S.Ct. 810, 85 L.Ed. 1172.

3. We shall assume, for the purposes of this discussion, that James' disobedience of the subpoena could have been prosecuted criminally under 18 U.S.C.A. § 1503, as conspiracy to obstruct justice. Obviously if James' conduct could not have been prosecuted criminally, he would have no standing to demand a jury trial.

Neither was James entitled to have a jury pass upon his guilt as of right, under the Constitution. This question was the subject of consideration by the Supreme Court in Green v. United States, 356 U.S. 165, at page 183, 78 S.Ct. 632, at page 643, where Mr. Justice Harlan, speaking for the majority, in resolving the pleaded right under the Fifth Amendment, stated: "The statements of this Court in a long and unbroken line of decisions involving contempts ranging from misbehavior in court to disobedience of court orders establish beyond peradventure that criminal contempts are not subject to jury trial as a matter of constitutional right." [4]

█ Finally, it is contended that the sentence imposed on James is beyond the power of the Court, that it is grossly excessive, and constitutes an abuse of discretion by the trial court. In the first instance, James charges that the trial court was limited in its sentencing powers by § 402 of Title 18, and that the maximum sentence which could be imposed under that section was a term of six months imprisonment. Section 402 does so limit the sentence to be imposed for willful disobedience of the court's process when such disobedience is also a criminal offense, but § 402 contains the identical language of § 3691 which excepts from its operation contempt of process in an action prosecuted in the name of the United States. See Green v. United States, 356 U.S. 165, 180, 78 S.Ct. 632, 2 L.Ed.2d 672. In this circumstance, we turn again to § 401, to find that the court has power "to punish * * * *at its discretion* * * *." (Emphasis added.)

We approach this question mindful that where Congress has not imposed limitations on the sentencing power that "the district courts have a special duty to exercise such an extraordinary power with the utmost sense of responsibility and circumspection," Green v. United States, 356 U.S. at page 188, 78 S.Ct. at page 645, and that we, as an appellate court, have "a special responsibility for determining that the power is not abused." Ibid.

In light of this admonition, we have given careful consideration to the argument advanced in support of the contention of the excessiveness of the sentence, and have been driven to the conclusion that the discretion vested in the trial court was not abused.

The contempt here was, by any criterion, test or yardstick, wanton, nefarious and reprehensible. This record warrants the clear inference that the disobedience by James was the result of a deliberate plan and scheme designed to defy and frustrate the authority of the Court. As stated by the Supreme Court in United States v. United Mine Workers, 330 U.S. at page 303, 67 S.Ct. at page 701: "The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril." Furthermore, the sentence was well within the five-year criminal penalty provided under 18 U.S. C.A. § 1503. Compare, Green v. United States, supra, 356 U.S. at page 189, 78 S.Ct. at page 645.

Regardless of whether the disobedience by defendant James, under the circumstances shown, constituted a contempt embraced by § 401 or § 402, because the act also constituted a criminal offense, the fact remains that by the clear terms of the applicable statutes, James was not entitled to a jury trial, and the Court was not restricted by the sentencing limits of § 402. The appeal of defendant Harold Nevers, No. 16,355, is dismissed, the judgment as to defendant James, No. 16,341, is affirmed.

---

4. It is clear that contemnors have no constitutional right to jury trial under Article III, § 2, the Fifth Amendment, or the Sixth Amendment. See, United States v. United Mine Workers, 330 U.S. 258, 298, 67 S.Ct. 677, 91 L.Ed. 884; Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656; Michaelson v. United States, 266 U.S. 42, 67, 45 S.Ct. 18, 69 L.Ed. 162.