# SUPREME COURT.

## ALBERT L. HELMBOLD agt. THE HENRY T. HELMBOLD MANUFACTURING COMPANY.

*Trade-mark — Individual name — right to, not affected by bankruptcy proceedings — Evidence to establish the decree or judgment of one court in another.*

A court of equity will refuse to interfere in behalf of persons claiming property in a trade-mark where such person is shown to be advertising his wares under representations which are false. He is entitled to no protection in a business carried on by means of untrue representations and statements. An order of a court should not suppress the publication of the truth and allow the utterance of a falsehood (*See, to same effect, Seabury* agt. *Grosvenor, ante,* 192).

Where the plaintiff undertakes to sell his compound, not only under the name and alleged trade-mark which Henry T. Helmbold formerly used, and which he still claims to use under and through the corporation with which he is now connected, but upon a representation that said Helmbold superintends, personally, its manufacture, and by his own signature certifies to the genuiness of each bottle:

*Held,* that this is clearly and confessedly false, and the plaintiff is entitled to no protection in a business carried on by means of such untrue and false representations.

A trade-mark must, as the term imports, be one consisting of a word, an expression, a device or a mark invented or adopted by the owner which designates and distinguishes his production from the general manufacture of the same article, and it cannot be the appropriation of words belonging to the general public which describe truly a known product.

A particular process of manufacture may be owned when the legal steps to acquire such ownership have been taken, or a particular mark or name designating the manufacturer may by use become the subject of protection, but words and phrases in common use, describing truly an article offered to the public, cannot become individual property any more than those generally employed in life which must be used to make speech intelligible.

Personal knowledge and the right to use words truly descriptive of things

cannot, by legal process, be taken from an individual against his will, and without his voluntary surrender and assignment thereof.

Although a person can by voluntary sale and assignment transfer the right to use his knowledge and name, the right to use his own knowledge and name cannot be taken from him through the order of a bankrupt court, or by any other judicial proceeding whatever.

The name of a man is a part of his being, so indissolubly connected with and attached to him, and which distinguishes and separates him from all mankind, and enables the public to know him and that which he has prepared; it cannot be taken from him and given to another, so that the latter, by the use of such name, may vend and sell his own preparations as if they were those of the former.

The decree or judgment of one court cannot be shown in another by the oral statement of a witness; the record, or an exemplified copy thereof, must be produced.

*At Chambers, September, 1877.*

APPLICATION to restrain the defendant from the use of an alleged trade-mark.

*Ira D. Warren,* for plaintiff and motion.

*George M. Curtis,* for defendant and opposed.

WESTBROOK, *J.* — It is conceded that Mr. Henry T. Helmbold was the original manufacturer of an article known as " H. T. Helmbold's Highly Concentrated Compound Fluid Extract of Buchu," and that he continued such manufacture for many years. On the 13th of September, 1872, the said Helmbold was declared and adjudicated a bankrupt, and on the fourth day of November of the same year an assignee in bankruptcy of his estate was appointed. Under the order of the bankrupt court, the plaintiff claims that the title to, and right to use, the name " H. T. Helmbold's Highly Concentrated Compound Fluid Extract of Buchu, " in the manufacture and sale of the compound which had been acquired by said Henry T. Helmbold through use, became vested in such assignee, who, in turn, transferred it to the plaintiff.

The plaintiff further claims that from the year 1862 up to the 5th day of March, 1873, he manufactured the preparation which bore the name hereinbefore stated for his brother, Henry T. Helmbold, and for the assignee in bankruptcy, and since that date he has manufactured it on his own account, using the aforesaid name and the labels and wrappers which had been used by the said Henry T. Helmbold.

The wrapper or label around the bottle containing the preparation which the plaintiff vends, in addition to the name indicating the article to be that of H. T. Helmbold, also states as follows: " None genuine unless signed H. T. Helmbold." " Principal depots for the sale of Helmbold's genuine preparations at Helmbold's Temple of Pharmacy, Continental Hotel and Helmbold's Medical Depot, 101 South Tenth street, Philadelphia, Pa." " Remarks — The quality and purity of these preparations is guaranteed by the reputation acquired in many years' experience, and close attention to business, and the confidence and liberal patronage of the medical faculty and the public. Both the fluid and other extracts have been admitted to use in the United States army, and in all the State hospitals and public sanitary institutions, as well as in private practice, are in general demand as invaluable remedies." ° " Directions for using Helmbold's genuine preparations inside, printed in English, French, German and Spanish."

It will be observed that the effect of the label, as used by the plaintiff, is to assure the public that the preparation put up by him, and which he charges to be "a useful and valuable article," is not only the original medicine manufactured by H. T. Helmbold, but that it is also prepared under the latter's personal supervision, and its usefulness and efficacy are guaranteed by his personal reputation and experience.

The defendant is a manufacturing company organized under the laws of this state, of which Henry T. Helmbold, the original compounder of the medicine which is the cause of dispute between the parties to this action, was, and is, one of

the copartners, and such company, by the aid and concurrence of said Henry T. Helmbold, manufactures and puts up for sale an article also called " Henry T. Helmbold's Highly Concentrated Compound of Fluid Extract." Whilst the preparation of the defendant has the same name with that of the plaintiff, and its sale and use are recommended by printing upon the wrapper the same arguments and reasons which the plaintiff's wrapper contains, yet such printing is in carmine ink, and it professes not to be manufactured by the plaintiff, or at his establishment in Philadelphia, but by the defendant in the city of New York.

No attempt has been made by the defendant to vend its article as that manufactured by the plaintiff, but, on the contrary, the plaintiff complains that the defendant has warned the public against the preparation of the plaintiff, upon the alleged ground that it was not compounded according to the original Helmbold receipt. The answer is verified by Henry T. Helmbold, who has also made the principal affidavit in opposition to the injunction asked for by the plaintiff.

Upon the facts which have been detailed, the first clear and conclusive answer to the application of the plaintiff for the injunction restraining the defendants from using the name given to its preparation is, that the plaintiff's label is untrue, and the effect of granting the relief asked for would be the issue of an order of the court prohibiting the use of a name and a wrapper, which states the truth, for the benefit of one who uses a name and wrapper which convey an untruth.

If what the plaintiff states upon the wrappers of his bottles containing the medicine, and which has been hereinbefore set forth is remembered, it will appear, as has also been stated, that he undertakes to sell his compound, not only under the name and alleged trade-mark which Henry T. Helmbold formerly used, and which he still claims to use under and through the corporation with which he is now connected, but upon a representation that said Helmbold, super-

intends, personally, its manufacture, and by his own signature certifies to the genuineness of each bottle. This, clearly and confessedly, is false, and the plaintiff is entitled to no protection in a business carried on by means of untrue representations and statements.

As Henry T. Helmbold is personally employed with the defendant, and whatever value his personal care and supervision give to the defendant's business fairly belongs to it, and not to the plaintiff, an order of court should not suppress the publication of the truth and allow the utterance of falsehood.

Whilst, for the reason, then, just given, the injunction asked by the plaintiff must be refused, it seems equally clear that the plaintiff acquired no title whatever to the so-called trade-mark by the proceedings in bankruptcy.

It is not denied that Henry T. Helmbold could, by voluntary sale and assignment, transfer the right to use his knowledge and name, but it is not seen how the right to use his own knowledge and name can be taken from him by any judicial proceeding whatever. If they can be, then the merchant who has become unfortunate, but who has still a knowledge and a name with which to begin business anew, must, if he has been adjudged a bankrupt, be content to leave with his assets his brains and his character.

This is no over-statement of the case, as the argument which follows will, we think, make manifest. Admitting that the plaintiff has the secret of the compound, which was once Henry T. Helmbold's alone (this, however, the latter most expressly denies), did the decree of the bankrupt court transfer the sole right to use it to the assignees in bankruptcy and thence to the plaintiff? This will not be claimed; neither is it pretended that the mixture is not, in fact, what its name declares, "A Fluid Extract of Buchu," the right to make which and to declare by plain words in common and general use the character of the mixture, must, in the absence of a patent protecting the process of manufacture, belong to any

one able to make the article, and who desires to utilize his knowledge by its preparation and sale. For example : A could not compound a fluid extract from coffee, and, after its introduction to the public as such an article, prevent B, who has the knowledge and skill necessary to produce a similar extract, from using such knowledge and skill, and from employing suitable and ordinary words to inform buyers truly as to its nature. If B can, in such a case, be enjoined, then language in general use to express thought and to convey information can be appropriated, and any one will then be able to own words which are now the common property of all English-speaking people. A trade-mark must, in a case like this, as the term imports, be one consisting of a word, an expression, a device, or a mark invented or adopted by the owner, which designates and distinguishes his production from the general manufacture of the same article, and it cannot be the appropriation of words belonging to the general public which describe truly a known product. As before stated, a particular process of manufacture may be owned when the legal steps to acquire such ownership have been taken, or a particular mark or name designating the manufacturer may, by use, become the subject of protection ; but words and phrases in common use, describing truly an article offered to the public, cannot become individual property any more than those generally employed in life which must be used to make speech intelligible. .

Assuming, then, that personal knowledge and the right to use words truly descriptive of things cannot, by legal process, be taken from an individual against his will, and without his voluntary surrender and assignment thereof, what remains of the plaintiff's case ? To a preparation of buchu, which was a drug well known by that name, Mr. Henry T. Helmbold had given his own name as the compounder thereof. This was its only distinctive feature. The remainder of the so-called trade-mark consisted of words descriptive of the compound, as much so as "extract of sugar" or "extract of lemon"

Helmbold agt. Henry T. Helmbold Manufacturing Co.

would describe what was really the extract of either. Of the right to use his own name in such a preparation, can he be deprived ?

When applied to his own personal compound, his name simply identifies his own goods. If any other person assumes it in a similar manufacture, the law would protect him, because the public is deceived and he is injured. The imposition and the injury enjoined come from the employment, not of a mere mark the property of another, but from the direct appropriation of a name identifying a man and his own, to whom and his it can alone be applicable. The name of a man is a part of his being, so indissolubly connected with and attached to him, that we fail to see how the one which distinguishes and separates Henry T. Hembold from all mankind, and enables the public to know him and that which he has prepared, can be taken from him and given to another, so that the latter, by the use of such name, may vend and sell his own preparations as if they were those of the former. If this can be done, then the law and the courts not only enable the quack and the adventurer to impose their compounds and manufactures upon the public under the disguise and cover of an honored name, but they have, with the property of the unfortunate bankrupt, also appropriated and transferred his knowledge, skill, and reputation. Is this the policy of our bankrupt statutes ? If it is, then, instead of being a mode of relieving the debtor class, as well as a source of protection to their creditors, every bankruptcy statute is a grave, in which every hope and aspiration of the future of him who can be subjected to its operation must be forever buried. Hitherto the unfortunate being whose property has been swept away by the vicissitudes of business, has supposed his knowledge and reputation were still left to him as a capital for a new beginning. That resource is now also gone, if the plaintiff in this cause is right in his claim, and the future of the bankrupt is shrouded in a darkness so thick and gloomy that not a single ray of light is left to relieve its horrors. To the soundness of such a result this

court is unable to subscribe. The name of Henry T. Helmbold must still belong to him, to whom his parents gave it. No law and no court can take it from him. The property which he had acquired belongs to his creditors, but the name and whatever of character, good or bad, belonging to it, and which he has himself made, are his, and must so continue to be until he voluntarily parts with them. He has the right to make any extract he pleases, and to tell the public by the use of his own name that the preparation is his, and not that of another, and neither the plaintiff nor any other person can place that name upon a preparation not his, against his will, and deprive him of the use thereof. Such act would not only impose upon others, but would also be so cruel and outrageous toward him that, as it seems to me, no law and no court could justify it.

The principle that a manufacturer can apply his own name to his own creation was fully recognized by the court of appeals in *Meneely* agt. *Meneely* (62 *N. Y.*, 427). Though it was conceded that the plaintiffs in that cause had succeeded to the business of the original manufacturer (Andrew Meneely) of the famous Meneely bells, it was held that the defendant had the right to call all the bells made by him by his own name (Meneely), provided he did not so use that name as to make the public believe that his bells were constructed by the plaintiffs. Such a use of his own name is all that Henry T. Helmbold claims, and it is just such a use which the plaintiffs would prevent and enjoin. The former does not seek to impose upon the public his own mixture by giving them to understand that it is the preparation of the latter ; on the contrary, he most carefully notifies the world that he, through the company which bears his name, and with which he is actively connected, and not the plaintiff, manufactures the article which he offers for sale. Unlike the defendant in *Croft* agt. *Day* (7 *Beavan*, 84), and in other cases to be found, he sails under no false colors, to the injury of the public and the plaintiff, but plainly hoists his own, distinctly proclaiming

that the preparation offered is his, and not that of the plain-
tiff. Indeed, so loudly and publicly has this proclamation, by
means of advertisements, been made, that one of the grounds
of complaint which the plaintiff has strenuously urged is,
that Henry T. Helmbold is causing the world to believe that
he, and not the plaintiff, is that individual. In fact, this cause
is the exact opposite of *Croft* agt. *Day*, for while in that
the complaint was that the defendant was causing the world
to believe that he was the original Day & Martin, the famous
blacking manufacturers, which was false, the complaint in
this is that the original and genuine Henry T. Helmbold will
not allow the plaintiff falsely to assume that individual's
name, and thus enable him (the plaintiff) to impose upon the
public. If a case founded upon such a position has either
soundness or justice to commend it to the equitable power of
this court, the discovery thereof has not been made by the
judge to whom it was presented.

With the discussion of one other proposition, which the
plaintiff has incidentally thrown into the argument, this
opinion will close. He says that H. T. Helmbold has been
adjudged by the courts of a sister state to be a lunatic, and
that he has but recently escaped from actual confinement as
such. That he is a lunatic, in fact, the defense and the party
so declared to be insane emphatically deny. If Henry T.
Helmbold be really insane, such condition has not been
shown. If the decree of the Pennsylvania court could estab-
lish his insanity conclusively to this tribunal, the effect
thereof, if so established, need not be considered; for no order
or judgment of that state has been proven. In an affidavit
to be used upon a motion, as in testimony to be offered upon
a trial, a fact can be established by legal evidence only. The
decree or judgment of one court cannot be shown in another
by the oral statement of a witness, the record, or an exempli-
fied copy thereof, must be produced. This is an elementary
rule, and cannot be departed from now. Were such record,
or a duly authenticated copy, produced, if any can be

Helmbold agt. Henry T. Helmbold Manufacturing Co.

obtained, perhaps it might appear that the proceedings were irregular and invalid. At all events, as there is no proof upon which the court can act establishing an adjudication elsewhere, its effect need not be considered.

For the reasons stated, the application of the plaintiff for an injunction must be denied, with costs.