(24 Misc. Rep. 482.)

### BELLOWS v. BELLOWS et al.

(Supreme Court, Special Term, New York County. August, 1898.)

1. ASSIGNMENTS FOR CREDITORS—WHAT PASSES—TRADE-NAMES.
   An assignment by an insolvent debtor, by which property is described under a general designation, will not carry the right of the assignor to the use of his own name in his future business.

2. TRADE NAMES—ABANDONMENT—INJUNCTION.
   Where one had abandoned the use of his name as a trade-name for 25 years, and then made a general assignment, equity will not enforce the right to such trade-name of one who purchased the same from the assignees 20 years after the assignment.

Action by Charles Bellows against Arthur C. Bellows and others. Complaint dismissed.

Reeves, Todd & Swain (A. G. Todd, of counsel), for plaintiff.
John H. Montgomery (G. D. Beattys, of counsel), for defendants.

STOVER, J. This is an action to restrain the defendants from using the name of Charles Bellows in their business. The complaint alleges: That in the year 1847 one Charles Bellows, the

father of the plaintiff, was established as a dealer in wines and spirits, and for six years (until 1853) conducted the business under the name of Charles Bellows, and subsequently under the name of Charles Bellows & Co. That about 1878 said Charles Bellows made an insolvent assignment for the benefit of creditors, and about the same year the firm of Charles Bellows & Co. also made a general assignment for the benefit of creditors. Shortly after the assignment in 1878, Charles Bellows, Sr., started a business at 50 Broad street; conducting the same as agent for M. E. Bellows, his wife. This business was conducted in this form until his death, in 1890. Plaintiff during this time was employed in the business conducted by Charles Bellows, as agent, and after his death for a time managed the business for M. E. Bellows, as attorney. In the fall of 1890 the plaintiff, being unable to buy the business from his stepmother, started a business at 52 Broad street. Nearly a year afterwards he moved into New street, and subsequently to his present location, No. 52 New street. From 1878 to 1890 the sign over the place of business at 50 Broad street was, "Charles Bellows, Agent." After the death of Charles Bellows an additional sign was placed over the old one, on which was, "M. E. Bellows, Formerly;" so that since then the sign has read, "M. E. Bellows, Formerly Charles Bellows, Agent." In 1891 M. E. Bellows assigned a half interest in the business to A. C. Bellows, and by her will gave the other half to C. E. S. Bellows. These two defendants carried on the business under the firm name of M. E. Bellows' Sons, representing themselves as successors to the business formerly carried on under the name of "Charles Bellows, Agent," until July, 1897, when they assigned the business to Kittie S. Bellows. The complaint contains the further allegation that the assignees of said Charles Bellows and of Charles Bellows & Co. sold the good will and name as aforesaid of the late Charles Bellows and the late Charles Bellows & Co. to the plaintiff, and the plaintiff purchased and holds assignments of the same. These assignments were executed in September, 1897, just prior to the commencement of this action. They are for a nominal consideration, and the assignments of the right to use the name of Charles Bellows are conditioned upon any such right existing.

A great deal of testimony has been given as to the various changes in business, and succession, as to title, etc., of the business at No. 50 Broad street, formerly owned by Charles Bellows; but it will be seen that the plaintiff's cause of action is based upon the assignments made by the assignor for the benefit of creditors, and unless the plaintiff has, through such assignments, obtained the right to use the name of Charles Bellows, he has stated no cause of action, because there is no evidence in the case to show that the use of the name of Charles Bellows by the defendants was calculated to, or did in any way, deceive the public, or operate as a fraud upon any right of the plaintiff. There is no question of trade-mark, nor do I think the plaintiff has shown any exclusive right to the use of the name of Charles Bellows, or Charles Bellows & Co. If it was claimed that plaintiff is the successor of the firm of Charles Bellows or Charles Bellows & Co., and was entitled to the use of the name, the

failure to comply with the statutory requirements upon assuming the use of a partnership name would be a sufficient answer. But, without discussing these inconclusive and hazy rights, the main, if not the sole, contention of the plaintiff, that he acquired by assignment a right to use the name, is utterly without foundation. While it is true that a person may, by proper assignment, convey the right to use his name in any business, yet such assignment must be an unequivocal and direct conveyance of such right, and such right would not pass under the ordinary phraseology of a general assignment for the benefit of creditors. As was said in the case of Helmbold v. Helmbold Co., 53 How. Prac. 453:

"The name of a man is a part of his being, so indissolubly connected with and attached to him that we fail to see how the one which distinguishes and separates him from all mankind, and enables the public to know him and that which he has prepared, can be taken from him and given to another, so that the latter, by the use of such name, may vend and sell his own preparations as if they were those of the former. * * * The unfortunate being whose property has been swept away by the vicissitudes of business has supposed his knowledge and reputation were still left to him as a capital for new beginning. * * * The name of [a man] must still belong to him to whom his parents gave it. No law and no court can take it from him. The property which he had acquired belongs to his creditors, but the name, and whatever of character, good or bad, belonging to it, and which he has himself made, are his, and must so continue to be until he voluntarily parts with them."

It will need no elaborate reasoning to convince the average legal mind that a conveyance to an assignee by an insolvent debtor, under our assignment laws, by which, under general designation, property is described, would not include the right of the assignor to the use of his own name in the conduct of any business that he might thereafter undertake. And it would seem in this particular case that such construction had been given by the assignee to the assignment, for the very assignment by which he undertakes to assign the right to the use of the name of Charles Bellows is subjected to the condition "if any" exists. At the time the assignment was made Charles Bellows was not the owner of the business, but the style was "Charles Bellows & Company," and such had been the name under which the business was conducted since 1853 (25 years). And the fact that assignors have waited over 20 years before disposing of such right is sufficient to bar the interference of a court of equity.

I do not think that the assignments executed in September, 1897, operate to confer any right to the exclusive use of the name of Charles Bellows by the plaintiff in this action. The business at 50 Broad street has been continued since the death of Charles Bellows by the various successors, and there is no attempt now to deceive the public by advertising that Charles Bellows does business there, but it is held out only that they have succeeded to the business formerly conducted by Charles Bellows, Agent, which is the fact. There is no fraud practiced upon the public or the plaintiff, and I can see no reason for the equitable interference of the court. The complaint must be dismissed upon the merits, with costs.

Complaint dismissed, with costs.