## BEAUCHAMP v. UNITED STATES.
### No. 7669.

Circuit Court of Appeals, Ninth Circuit.
April 8, 1935.

Louis F. Labarere, John A. Cronin, and H. B. Cornell, all of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and Jack L. Powell, Asst. U. S. Atty., both of Los Angeles, Cal.

Before WILBUR and GARRECHT, Circuit Judges, and CAVANAH, District Judge.

GARRECHT, Circuit Judge.

Appellant herein for many years was engaged in conducting a general insurance business, principally in the city of Long Beach, Cal. By his individual efforts he had built up a large and, for a time, lucrative business. In 1932 he caused to be organized a corporation under the name of C. D. Beauchamp & Co., of which he owned all the shares except such as were necessary for other directors to qualify. Said

corporation became the successor of, and continued to conduct, the said insurance business; appellant being in complete control thereof. On account of his illness, the business became involved in financial difficulties; a voluntary petition in bankruptcy was filed; and on July 1, 1932, the said corporation was duly adjudged a bankrupt and the matter referred to Rupert B. Turnbull, referee in bankruptcy, at Los Angeles, Cal., for administration, and one Ernest U. Schroeter was appointed receiver in bankruptcy. On July 7, 1932, said receiver filed with said referee a petition for an order to show cause for a temporary restraining order and permanent injunction, in which, among other things, it was alleged that in the assets of the said bankrupt corporation were certain records relating to the expiration of dates of policies; that the appellant was president of said bankrupt corporation and the sole owner of all the stock thereof; that prior to the adjudication of said corporation as a bankrupt its former place of business had been abandoned; that immediately following such abandonment an insurance business under the name of Beauchamp was opened in offices adjoining those formerly occupied by said bankrupt corporation; that, while said C. D. Beauchamp asserted that the said new business was being conducted by his sons, the petitioning receiver on information and belief alleged that the appellant and his associates were attempting to conduct in said new place of business the business formerly enjoyed by said bankrupt corporation, and was using therein information taken from the records of said company. It was further alleged that, in order to preserve the assets of the said bankrupt, it was necessary to enjoin John Doe Beauchamp and Richard Roe Beauchamp, sons of said appellant, from soliciting the patrons of the bankrupt.

Upon this petition an order to show cause issued, citing appellant and his sons, C. E. Beauchamp and Claron D. Beauchamp. On July 15, 1932, said respondents appeared before the referee; a hearing was had, and the referee found that appellant at all times since the incorporation of the bankrupt was the owner of all of the capital stock thereof, except the directors' qualifying shares; and that said corporation was at all times the alter ego of appellant. The proceedings as to the appellant, however, were dismissed on the statement of his counsel that he did not intend for the present to engage in any business. The referee further found that C. E. Beauchamp and Claron D. Beauchamp were the servants, agents, and employees of the said bankrupt corporation.

Thereupon the referee entered the following order:

"It Is Hereby Ordered That C. E. and Claron D. Beauchamp and the former employees and servants of said bankrupt be and they are hereby permanently enjoined and restrained from using the name of the bankrupt in the insurance business or otherwise, from using the letterheads, the printed, engraved, typewritten or other literature of the bankrupt, including the statement and letterheads; from using directly or indirectly or giving to another for use either from himself or other persons any list or compilation of the names and addresses of the patrons, former or present, or prospective patrons of the bankrupt for renewals or otherwise.

"That said C. E. and Claron D. Beauchamp and the former employees of said bankrupt are hereby further permanently enjoined and restrained from representing that they or either of them, are the successor in interest to the bankrupt. or that they or either of them are entitled to take over or have been entitled to take over or have taken over the business of the bankrupt, or that money due bankrupt is payable to them as successors.

"It Is Further Ordered that C. E. and Claron D. Beauchamp and the former employees and servants of said bankrupt be and they and each of them are hereby restrained from divulging the confidential knowledge gained in the course of their employment with C. D. Beauchamp & Company, Inc., or from using such information to the prejudice of the bankrupt.

"It Is Further Ordered that C. E. Beauchamp, Claron D. Beauchamp and the former employees of said bankrupt be and they are hereby enjoined from using the telephone number of the bankrupt, viz., 'Long Beach 64743' or from holding themselves out as being entitled to use the same as the telephone number at the place of business of them or either of them.

"Dated August 1, 1932."

On the 29th day of July, 1932, the said Ernest U. Schroeter, receiver of said bankrupt corporation's estate, filed a return of a proposed sale of the assets of the business of said bankrupt, as a going concern,

by which petition it was disclosed that a sale was proposed to be made to one M. C. Richards, of Long Beach, Cal., for the sum of $12,500, subject to the confirmation by the court, and by which it was intended to sell all of the right, title, and interest of the estate of C. D. Beauchamp & Co., a corporation, bankrupt, and of the trustee in bankruptcy, in and to the right to use the name of the bankrupt's insurance business, and the right to solicit the renewals of such insurance business, all of the insurance records, list of clients and customers, card index lists, and such other lists of the customers and clients of the bankrupt's insurance business, all office furniture, furnishings, files and equipment, all office supplies and stationery, the right to use the former telephone number of the bankrupt, and all other personal property of the bankrupt's estate of every kind and nature whatsoever, saving and excepting the cash on hand in the hands of the said trustee, and saving all accounts receivable belonging to the said bankrupt's estate. The said purchase price of $12,500 was to be paid by the said M. C. Richards in installments of $3,000 cash upon the confirmation of the proposed sale, and twenty-three equal installments of $400, payable on the 13th day of each and every calendar month, and a final payment of $300 to be paid on August 15, 1934.

An order confirming the sale of the assets and business of the said bankrupt to M. C. Richards was made on the 16th day of August, 1932.

In the latter part of January, 1933, the said C. D. Beauchamp, appellant herein, announced by written notices his intention to re-enter the insurance business and open a general insurance agency at 15 Locust avenue, Long Beach, Cal., on or about the 1st day of February, 1933. Pursuant to said notice, the said C. D. Beauchamp, appellant herein, did enter into the general insurance business, and ever since said date has been, and now is, conducting an insurance business in the said city of Long Beach, Cal. On the 15th day of August, 1933, an information charging criminal contempt against said C. D. Beauchamp, appellant herein, was filed, and an order to show cause issued thereon, which was served upon him. The basis of this criminal information for contempt is the alleged violation of the said permanent injunction, issued by the said Referee Turnbull heretofore referred to in this statement of facts.

After setting forth a great deal of the history of the proceedings in connection with this bankruptcy matter, the information proceeds to charge in effect that immediately after the said announcement by said C. D. Beauchamp, appellant herein, of his intention to re-engage in the insurance business on or about February 1st, 1933, he, "with the knowledge of the issuance and serving upon him of the injunction, and with knowledge of his position with respect to the bankrupt corporation, he having been the president thereof and the owner and/or in control of all of the stock of the said bankrupt corporation prior to its failure, proceeded to appropriate to his own use and for his own financial benefit the business and good will theretofore his property and the property of the bankrupt corporation and which had been so sold to the said M. C. Richards; that the said C. D. Beauchamp, knowing the said business and good will thereof had been sold by the Trustee in Bankruptcy for a substantial sum of money, and that said sale had been approved by the court, deliberately, wilfully and purposely proceeded in a course of conduct to appropriate the same and, among other things, as a means to accomplish the said result, did the following specific things. * * * *"

Among the specific things set forth in the information, as constituting this endeavor or effort to appropriate the business of the bankrupt, are the following: (1) The writing of a certain letter to the board of education of the city of Long Beach, of the Long Beach school district, a former customer of the bankrupt corporation, soliciting a renewal of its business; (2) the solicitation of the insurance business of one Fern Hotaling, a former customer of the bankrupt corporation, by a letter; and (3) that, as a part of the plan to so appropriate the good will of the bankrupt's business to himself and for his own use, said C. D. Beauchamp, did on or about February 1, 1933, employ one Iva Cadieux, and supply her with knowledge which he had acquired in the course of his employment as president of the bankrupt corporation, relating to the insurance business of the bankrupt, and that the said Iva Cadieux did, by the use of said information, solicit on behalf of C. D. Beauchamp renewals of insurance business formerly enjoyed on certain policies which had been written by the bankrupt.

It is charged in the information that, as a result of these alleged direct and indirect acts of solicitation, said C. D. Beauchamp caused great embarrassment and difficulty to the purchaser of the assets and good will of the bankrupt, and great embarrassment to the trustee of the estate, to the extent that his conduct "interfered with the assets of the bankrupt and the collection, control and disposition of the purchase price thereof, and did bring into question and disrepute the official acts and orders of said court and its officers, to-wit: the sale in good faith of the assets of said bankrupt and the purchase in good faith at the sale had in open court to the purchaser thereof, and the harassment and embarrassment of the officers of this court in the consummation of said sale, to-wit: the delivery of the thing purchased in good faith and the protection of the bidder who purchased at the said judicial sale; that the said C. D. Beauchamp caused the solicitation on his behalf by Iva Cadieux of other persons whose business the bankrupt corporation had enjoyed on policies of insurance which were then in force, which had been written by the said bankrupt and which were about to expire," all to the prejudice, harassment, and embarrassment of the officers in charge of the administration of this estate and the officers of the court. It is further charged that these acts "were done and performed deliberately in an attempt to obtain the property of the bankrupt estate for his own benefit and use, and in and to which said property the said C. D. Beauchamp had no right, title, interest, claim or demand, and which said property the said C. D. Beauchamp had relinquished under the terms of his voluntary petition in bankruptcy to the estate of said bankrupt"; and that such conduct had "harassed, embarrassed and delayed the conduct of the bankrupt's estate," and likewise delayed the administration of the estate, and damaged the bankrupt estate; that the same was a deliberate attempt to interfere with the assets of the estate, and the acts were done and performed by said C. D. Beauchamp willfully and intentionally, with full knowledge on his part that he was violating the terms and provisions of the permanent injunction which had been served upon him, and which had been explained to him by the referee. It is further charged, as a conclusion to the information, that the United States attorney's information gave "the Court to understand that the said C. D. Beauchamp, knowingly and wilfully ignored, violated and disobeyed the permanent injunction" set forth and referred to in said information, and was "now further knowingly and wilfully ignoring, violating and disobeying the said permanent injunction in the particulars above set forth," all "contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The defendant, C. D. Beauchamp, appellant herein, filed a demurrer to said information, specifying twenty-one specific grounds of objection thereto, which demurrer came on for hearing and was overruled by the District Court and the defendant, appellant herein, was ordered to answer said information.

On November 9, 1933, appellant filed his answer to said information. Many of the allegations of the information were admitted by defendant's answer, and issue joined on others. The cause came on for hearing and was submitted for determination. The court made findings of fact and conclusions of law, and adjudged defendant guilty as charged in the information, and sentenced him to pay a fine of $500, and that he stand committed until said fine is paid. Appellant contends that the information filed in this case, and upon which he was adjudged guilty of contempt, fails to state facts constituting the commission of any criminal or other contempt, and the acts alleged do not constitute the violation of any criminal or other law.

The question involved is: Has an individual, whose business and means of livelihood has been sold to some stranger by virtue of an order in bankruptcy, the right to re-engage in the same business, enter into competition with the purchaser at said sale of such business, and solicit former customers' patronage previously enjoyed, without being guilty of the commission of a crime or of contempt of court?

There is no allegation or showing that the injunction prohibited appellant from personally re-engaging in business and soliciting his former patrons. Appellant was not directly named in the injunctive order upon his representation that he did not then intend to re-engage in business, but it is argued that he comes within the inhibition of the injunction which also runs against the officers and agents of the Beauchamp Corporation, of which he was president.

There is nothing in the information or the injunction indicating a contractual or other duty assumed by the bankruptcy court

or its trustee to protect the purchaser at the bankrupt sale against any such acts as are claimed to have been committed by the appellant, assuming that the court had the legal power to so bind the trustee.

There is no statute which makes it an independent crime for a bankrupt to solicit his former customers after a sale of his assets through a bankruptcy court. A person whose property or business has been sold under a forced or judicial sale, and the bankrupt or assignor for the benefit of creditors, has the right to re-engage in the same line of business and to solicit his former customers after a sale of his business in bankruptcy.

The right of the purchaser of the good will of the business from the trustee in bankruptcy does not extend to restraining the bankrupt from again engaging in the same class of business or from seeking assistance in it from his former customers. By the sale of a business the good will thereof may be bought and sold, and this may be also sold under order of court. S. F. Myers Co. v. Tuttle (C. C. N. Y.) 183 F. 235; S. F. Myers Co. v. Tuttle (C. C. N. Y.) 188 F. 532; E. Edelman & Co. v. Fredericks Armature Mfg. Co. et al. (D. C. Pa.) 3 F. Supp. 973.

In considering the rights as between a seller and a buyer of a business, there is a distinction in law relative to voluntary sales by a person and those relating to involuntary or forced sales through judicial process. When the good will of a business is sold as an incident thereof by voluntary sale, many authorities hold that, in the absence of an agreement respecting the right to enter into competition, one who sells the business or his entire interest therein is not precluded from setting up a similar business or from soliciting former patrons and customers. On the other hand, there are authorities which hold that in such a sale there is an implied warranty or covenant against entering into competition with the purchaser of the business. It does not appear from the record that the trustee sold the assets and good will of the bankrupt estate with any warranty or agreement to protect the purchaser against competition on the part of the appellant, so the question of the power or authority of a trustee in bankruptcy to make such a sale is not directly involved.

■ The sale here in question was a judicial or forced sale. As to such sales the law is: "A judicial sale of a business together with its good will does not prevent the former owner from again conducting a similar business." 28 C. J. 742, § 14.

"A judicial sale of a business does not prevent the former owner from soliciting the customers of the old establishment." 28 C. J. 743, § 15.

Judge Cardozo, in Re Brown, 242 N. Y. 1, 150 N. E. 581, 584, 44 A. L. R. 510, distinguishes between voluntary and involuntary sales of good will.

"* * * After a voluntary sale, the seller, though he may compete, may not drum up or circularize the customers of the business. After a sale in invitum, he is not subject to a disability, so heavy. * * *"

He characterizes an involuntary sale as one "coerced by law."

See, also, Buffalo Oyster Co. v. Nenno, 132 Misc. 213, 229 N. Y. S. 210, 213; 19 L. R. A. (N. S.) note, pp. 765, 766.

■ The sale of the good will and business of the bankrupt involved in this case was a judicial or forced sale.

"The term 'judicial sale' is one of broad import, and has been held to include sales by a commissioner appointed by the court in enforcing judgments for amounts, which by contract of parties or under the law are made liens on land, sales by a receiver, sales by a trustee in bankruptcy. * * *" 35 C. J. 8, § 3.

"A sale of personal property by a trustee in bankruptcy, acting under an order of sale issued by the court, is a 'judicial sale.' * * *" 7 C. J. 230, § 357; Buffalo Oyster Co. v. Nenno, supra.

■ Appellant was under no contractual obligation to refrain from soliciting customers of the former business of which he was an agent. The right to use his own name in earning a livelihood should not be taken away. While a covenant not to solicit can be implied in a voluntary transfer, there is no such implication in an involuntary transfer. The policy of the Bankruptcy Act to give the bankrupt a fresh start in life would be defeated if he were precluded from engaging in a similar business or from soliciting his old customers. Were the policy of our bankrupt statutes otherwise, instead of being a mode of relieving the debtor, it would close to him every avenue of hope for the future. Helmbold v. Henry T. Helmbold Mfg. Co., 53 How. Prac. (N. Y.)

453; Theobald-Jansen Electric Co. v. Harry I. Wood E. Co., 285 F. 29 (C. C. A. 6); Bellows v. Bellows, 24 Misc. 482, 53 N. Y. S. 853.

The order of the referee appears invalid, for the reason that it is permanent, extends to all business, and is not restricted to any particular locality. The Code provides that: "One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a *similar* business within a *specified county, city,* or *a part thereof,* so long as the buyer, or any person deriving title to the good-will from him, carries on a like business therein." (Italics ours.) Civ. Code Cal. § 1674.

In order that disobedience of this injunction order may constitute contempt, it is necessary that the order be valid. Disobedience of a void mandate, order, judgment, or decree, or one issued by a court without jurisdiction of the subject-matter and parties litigant, is not contempt.

When "* * * a court of the United States undertakes, by its process of contempt, to punish a man for refusing to comply with an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing for the contempt is equally void. * * *" Ex parte Fisk, 113 U. S. 713, 5 S. Ct. 724, 726, 28 L. Ed. 1117; Ex parte Terry, 128 U. S. 289, 9 S. Ct. 77, 32 L. Ed. 405; In re Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. Ed. 216.

Judgment reversed.

WILBUR, Circuit Judge.

I concur in the reversal solely upon the ground that the appellant was not enjoined from transacting insurance business on his own account, and that it is not alleged or claimed that he has aided or abetted his sons, who were enjoined from conducting an insurance business, in so doing. I also agree that the injunction was erroneously granted, but such error is not a defense to a charge of contempt for violating the order. The remedy is by an appeal from the order granting the injunction. The court issuing the injunction had jurisdiction over the parties enjoined and over the subject-matter, and the order was not void. See Alemite Mfg. Corp. v. Staff (C. C. A.) 42 F.(2d) 832; Trickett v. Kaw Valley Drainage Dist. (C. C. A.) 25 F.(2d) 851, 858; Brougham v. Oceanic Steam Navigation Co. (C. C. A.) 205 F. 857; S. F. Myers Co. v. Tuttle (C. C.) 188 F. 532; E. Edelman & Co. v. Fredericks Armature Mfg. Co. (D. C. Pa.) 3 F. Supp. 973; Remington on Bankruptcy, § 2619.