**WESTERN FRUIT GROWERS, Inc., et al.**
**v. GOTFRIED et al.**

No. 10181.

Circuit Court of Appeals, Ninth Circuit.

May 27, 1943.

See, also, D.C., 45 F.Supp. 939.

G. V. Weikert, of Los Angeles, Cal., for appellants.

Leo V. Silverstein, U. S. Atty., and James L. Crawford and Wm. W. Worthington, Asst. U. S. Attys., all of Los Angeles, Cal., for the United States.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Appellees filed a debtor's petition in accordance with § 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. During the course of the proceedings the District Court adjudged appellants guilty of contempt for violating an order of the Conciliation Commissioner to whom the matter had been referred. They appeal from the judgment of contempt.

Alleging that they were co-partners operating as general farmers, appellees Gotfreid and Cruce filed a debtor's petition under § 75 of the Bankruptcy Act on March 9, 1942. An unsecured claim owed to appellant Western Fruit Growers, Inc. (hereinafter called Western), for equipment, supplies and machinery, was listed as the only debt of the partnership. Four pieces of land on which appellees were tenant farmers, equipment, supplies, machinery, trade-marks and a credit from Western were scheduled as assets. All the assets were claimed to be exempt. The matter was referred to a Conciliation Commissioner, who, on the day the petition was filed, entered an order restraining Western from interfering with the debtors' property until further order of the court. Western filed a petition to dismiss the farmer-debtor proceeding on the ground that the District Court had no jurisdiction thereof.

Appellees filed an amended petition pursuant to which the District Court adjudged them bankrupts under § 75, sub. s, of the Bankruptcy Act, and enjoined creditors from interfering by any judicial or official proceedings.

The record and briefs of the parties indicate the following facts. Several years ago, in 1940, Gotfried and Western entered into an oral agreement by the terms of which the former was to farm lands on which Western held leases, and the latter to finance the undertaking, furnish the necessary equipment, sell the crops, and make advances to Gotfried of $200.00 per month. After deducting all payments and expenses, any profits or losses remaining were to be divided equally between the two parties. If a sufficient profit resulted to Gotfried, Western agreed to sell the equipment to Gotfried at cost. Western invested over $30,000.00 in equipment, leased two packing houses in its own name, and also paid rents, bills and monthly advances to Gotfried.

About February 20, 1942, and less than a month before debtor's petition was filed, Gotfried and Cruce formed the co-partnership, which is the debtor in the proceedings under § 75. The equipment and machinery listed as assets in the debtor's petition were the same as that furnished to Gotfried by Western under the oral agreement. Some of it was in a packing house in Colton leased by Western and not listed in the debtor's schedule of assets. Some of it was moved to Vista in San Diego County.

After filing their petition, appellees continued to use the packing house in Colton and to harvest crops. Unable to obtain any relief from the Conciliation Commissioner, Woodall and Wright, appellants herein and employees of Western, about March 29, 1942, took possession of the Colton packing house and of all the equipment therein. Cruce promptly prayed for, and the Conciliation Commissioner issued, an order, directed to Western and others, including its employees Woodall and Wright, directing them to surrender possession of the warehouse in Colton, and the properties therein, to appellees or to show cause why they should not be certified to the District Court in contempt proceedings, and enjoining them from removing any personal property from the warehouse or interfering with any properties of Gotfried and Cruce. About April 9, 1942, Woodall and other Western employees took possession of the equipment in Vista. Thereafter, the Conciliation Commissioner adjudged Western and the six individuals guilty of contempt and ordered them to appear before the District Court to be punished. The order was based on conclusions of law to the effect that the debtor was entitled to the possession of and the court had exclusive jurisdiction of the property at Colton and at Vista. Except for four of the individuals, the District Court found in accord with the Commissioner; it adjudged Western and the two employees Woodall and Wright, guilty of contempt and fined them $1.000.00, $500.00 and $250.00 respectively. The contemners appeal.

The argument has been advanced that the District Court could make no valid order the disobedience of which would constitute contempt because it had no jurisdiction over the property to which its order referred.

■ That it is not contempt to disobey a void mandate, order, judgment, or decree, or one issued by a court without jurisdiction of the parties involved and of the subject matter has been frequently decided. Ex parte Fisk, 113 U.S. 713, 5 S.Ct. 724, 28 L. Ed. 1117; Ex parte Rowland, 104 U.S. 604, 26 L.Ed. 861; Beauchamp v. United States, 9 Cir., 76 F.2d 663. However, if a court has jurisdiction over both the parties and the subject matter, an order must be obeyed so long as it remains the order of the court. Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550; United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319, 8 Ann.Cas. 265; Brougham v. Oceanic Steam Navigation Co., 2 Cir., 205 F. 857. The court below sitting in bankruptcy had jurisdiction over the subject matter, that is, it had the power to act in the bankruptcy proceedings as § 75, sub. n, provides that the filing of a debtor's petition subjects "the farmer and all his property" to the "exclusive jurisdiction" of the court. Similarly, the court had jurisdiction of the appellants as Western voluntarily appeared and questioned the debtor's petition in the bankruptcy proceeding, and as Western acted through its employees Woodall and Wright. Therefore, they were obligated to conform to the court's orders.

■■ Appellants contend that the dismissal of the bankruptcy case in the District Court, in Re Gotfried, 45 F.Supp. 939, necessitates the dismissal of the ancillary contempt proceedings. Such a result occurs only in cases of civil contempt where the disposal of the original cause settles the rights of the parties, and the complainant is entitled to no further relief through punishment for contempt. In a proceeding for criminal contempt to vindicate the authority of the court, the outcome of the main case does not affect the conviction for contempt. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874; Worden v. Searls, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853; Salvage Process Corp. v. Acme Tank Cleaning Process Corp., 2 Cir., 86 F.2d 727; Eustace v. Lynch, 9 Cir., 80 F.2d 652.

Despite the fact that disobedience of the order would constitute contempt, the procedure below will not support a criminal judgment. § 41 of the Bankruptcy Act, 11 U.S.C.A. § 69, provides that in proceedings before a referee a person shall not disobey any lawful order, that if he does, the referee shall certify the facts to the judge and shall serve upon the person an order to show cause, and that the judge shall, "in a summary manner," hear evidence and punish the person "in the same manner and to the same extent as for a contempt committed before him."

Both appellants and appellees agree herein that criminal contempt is involved. The district judge stated that the question involved the vindication of the process of the court and not of the rights of the farmer-debtor. Furthermore, the fines imposed upon the contemners indicate a punitive rather than the remedial, nature of the punishment. Fox v. Capital Co., 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67; Michaelson v. United States, 266 U.S. 42, 65, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451; McCrone v. United States, 9 Cir., 100 F.2d 322, affirmed 307 U.S. 61, 59 S.Ct. 685, 83 L. Ed. 1108. However, the procedure required in a criminal prosecution was not followed.

Conformance with certain rules of practice in a criminal contempt proceeding is essential, even if it be conceded that the court had summary jurisdiction. In Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797, 34 L.R.A.,N.S., 874, discussing a violation of an injunction restraining the publication of any statement concerning the existence of a boycott, the court remarked: "* * * it is certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." In accord: Michaelson v. United States, 266 U.S. 42, 66, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451; and McIntosh v. United States, 9 Cir., 73 F.2d 908, 909 (contempt in a bankruptcy matter). In a summary proceeding against a witness for giving evasive answers and concealing facts before a bankruptcy referee, the court discussed criminal contempt and stated, In re Eskay, 3 Cir., 122 F.2d 819, 822: "Where the contempt has not been committed in the presence of the court and evidence must be taken to establish the contempt, the court's summary powers have been curtailed to the extent that the accused must be presumed to be innocent, need not testify against himself and must be found guilty beyond a reasonable doubt."

■ The prosecution should be conducted on behalf of the United States by the district attorney or on behalf of the court by

an attorney selected by it. In McCann v. New York Stock Exchange, 2 Cir., 80 F.2d 211, 214, the court declaring that the reason for observing the proper practice is to inform the respondent at the outset of the criminal nature of the matter, remarked that if an attorney of a party was selected the character of the suit might be equivocal, and concluded: "This can be made plain if the judge enters an order in limine, directing the attorney to prosecute the respondent criminally on behalf of the court, and if the papers supporting the process contain a copy of this order or allege its contents correctly. We think that unless this is done the prosecution must be deemed to be civil and will support no other than a remedial punishment." The principle is reiterated in Re Eskay, 3 Cir., 122 F.2d 819, 823; and in Federal Trade Commission v. A. McLean & Son, 7 Cir., 94 F.2d 802, 804.

■ In the instant case the contempt action was instituted by an affidavit of appellee Cruce, dated March 29, 1942, setting out the acts complained of and concluding as follows: "Wherefore, your affiant prays that an order be made and issued in the above entitled proceedings requiring said John Doe and Richard Roe [Western's two employees who personally took possession of the property] to deliver possession of said warehouse located at 55 South Eighth Street, Colton, California, *to Morris A. Gotfried and Lawrence Cruce,* a copartnership, forthwith, or upon their failure to do, for Western Fruit Growers, Inc., a corporation, T. H. Peppers, L. J. Colton, G. V. Weikert, Joseph P. Frushone, John Doe and Richard Roe to appear before the Honorable Fred Duffy at a time and place certain and show cause, if any they have, why they should not be certified to the United States District Court in contempt proceedings." (Italics ours.) On the same day the Conciliation Commissioner ordered with reference to the same group that possession of the warehouse and its contents be surrendered to appellees or cause be shown why they should not be certified to the District Court in contempt proceedings. In the initial stages of the proceeding, then, a remedial direction was prayed for and given, that is, that the property be returned to appellees.

The record shows that the district judge from the bench labeled the matter as one in criminal contempt, a fact which would serve to inform appellants of its nature. However, the hearings before both District Court and Commissioner were prose-

cuted by the attorneys for the appellees. Not until the trial in the District Court was actually in progress were the appellants definitely notified that the contempt was criminal in character. Therefore, the contemners were not aware at the outset of the criminal nature of the proceeding.

Furthermore, no attempt was made to prove appellants guilty beyond a reasonable doubt. At one point in the hearing before the District Court, appellants' attorney moved for an order directing the Conciliation Commissioner to certify to the court the entire record before him, the motion was denied on the ground that the Commissioner had filed his certificate, which was sufficient to warrant the statements contained in it unless impeached, and that therefore the burden of preparing the record was on the contemners not on the Commissioner (R. 157f).

■ At another time the trial judge declared: "I think the record is such as to require the corporate respondent, and the respondents Colton, Frushone, and Weikert, to make some showing on the order to show cause as to whether they should not be adjudged in contempt of court with respect to taking possession of certain properties scheduled in the bankruptcy schedule as being property of the estate of the alleged farmer-debtors." To this statement the attorney for contemners observed: "* * * as to that I think we would be willing to submit it on the transcript before the Conciliation Commissioner, because I know of nothing further that could be added," (R. 201). These comments indicate that the burden was placed on the contemners to exonerate themselves of the contempt charge, contrary to the general rule herein discussed.

It is true that the corporation conceded that it took possession of property in the Colton warehouse, but it contended that it did not thereby violate the order restraining interference with the property of Gotfried and Cruce, as it merely took into custody its own property. Under such circumstances "the burden of establishing * * * guilt beyond a reasonable doubt lay with the prosecution." In re McIntosh, 9 Cir., 73 F.2d 908, 910.

■ The power to punish for contempt should be exercised sparingly. We believe that the judgment of the court below cannot be upheld in view of the irregularities in the proceedings.

Reversed.