**In re Sydney FLOERSHEIM.**
**No. 18313.**

United States Court of Appeals
Ninth Circuit.
April 18, 1963.
As Modified May 31 and July 5, 1963.

James McI. Henderson, Gen. Counsel, Federal Trade Commission, Washington, D. C., and Charles C. Moore, Jr., and Raymond J. Lloyd, Attys. of the Federal Trade Commission, San Francisco, Cal., appointed to prosecute on behalf of this Court.

Murray M. Chotiner, Beverly Hills, Cal., for respondent.

Before ORR, BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

This court heretofore issued an order to show cause why the respondent herein, Sydney Floersheim, should not be adjudged in criminal contempt, and punished, for a violation of this court's order. 18 U.S.C. § 401(3). The proceeding was instituted at the request of the Federal Trade Commission. The decree herein involved was the final decree (filed December 29, 1959 by this court in its Cause No. 16328, entitled *Mitchell S. Mohr, et al., Petitioners, vs. Federal Trade Commission, Respondent*) enforcing the order to cease and desist theretofore issued by the Federal Trade Commission originally on June 1, 1956, and modified by the order dated November 14, 1958. The modified order of November 14, 1958, required respondent Floersheim, and his predecessor in interest, "to forthwith cease and desist from:

"1. Using or placing in the hands of others for use, any forms, questionnaires, or other materials, printed or written, which do not clearly reveal that the purpose for which the information is requested is that of obtaining information concerning delinquent debtors;

"2. Representing or placing in the hands of others any means of representing, directly or by implication that money is being held for or is due, persons concerning whom information is sought, or is collectible by such persons, unless money is in fact due and collectible by such persons and the amount of such money is accurately stated;

"3. Using the terms 'Claims Office,' 'Reverification Office,' or 'United States Credit Control Bureau,' or the picturization of an eagle, or any other word or phrase, or picturization of similar import to designate, describe or refer to respondents' business; or otherwise representing, directly or by implication, that requests for information concerning delinquent debtors are from the United States Government or any agency or branch thereof, or that their business is in any way connected with the United States Government;

"4. Using the name 'New Employment Status Questionnaire,' or

any other name of similar import to designate, describe or refer to Respondents' business; or otherwise representing directly or by implication that Respondents' business is that of gathering and furnishing information relative to employment;

"5. Using the name 'Disbursements Office,' or any other name of similar import to designate, describe or refer to Respondents' business; or otherwise representing, directly or by implication, that money has been deposited with them for persons from whom information is requested, unless or until the money has in fact been so deposited, and then only when the amount so deposited is clearly and expressly stated. * * "

An answer to the order to show cause was filed by Floersheim, denying any knowing, wilful or intentional violation, disobedience or failure to comply with this court's order of December 29, 1959, and as a separate defense, that the Federal Trade Commission had represented to him that certain language, if used by respondent Floersheim in his "forms," would constitute compliance by him with

the Trade Commission's and this court's orders. Petitioner filed a reply denying the nature and extent of the alleged agreement as to what would constitute compliance or noncompliance.

A stipulation had previously been entered into between the parties in the Federal Trade Commission proceedings, covering all essential facts here involved.

We should here state the nature of Floersheim's business. We described it in our previous opinion as that

" * * * of selling and distributing in interstate commerce so-called skip-trace forms * * * intended to be used by creditors and collection agencies in obtaining information concerning the whereabouts of defaulting debtors. The forms are sent to the last known address of the debtors in the hope that the debtors will return them with the desired information. If this information is supplied, the creditors or collection agencies are enabled to proceed with their collections."

We likewise refer to and incorporate herein paragraph five of the above mentioned stipulation.[1]

1. "5. Sydney Floersheim, through National Research Company and S. Floersheim Sales Company, is engaged in the business of selling and distributing in interstate commerce so-called skip-trace forms. These forms, together with return envelopes, have been and are being sold and distributed through S. Floersheim Sales Company, with principal office and place of business located at 7319 Beverly Boulevard, Los Angeles, California, to creditors and collection agencies located throughout the United States. The usual practice is that the purchasers of the forms fill in the blank spaces and mail the forms, together with return envelopes, to National Research Company at its office at 748 Washington Building, Washington, D. C., in covering envelopes for further mailing to addressees designated by the purchasers. The forms and return envelopes are then mailed by National Research Company from Washington, D. C., to addressees at locations throughout the United States. Attached hereto as Exhibit 1 and made a part of this stipula-

tion is an example of the covering envelopes in which the forms and return envelopes are mailed by National Research Company from Washington, D. C. to the addressees. As replies are received by National Research Company in Washington, D. C., they are in turn correlated and the information so acquired sent to the respective customers by National Research Company in Washington, D. C., and by the S. Floersheim Sales Company in Los Angeles, California. The description of operations and transactions contained in this paragraph are applicable to the handling of all the forms and envelopes referred to in the following paragraphs. With the sale of all forms the customer is furnished instruction cards which identify the particular forms to which they apply and are designed to assist the customer in the proper use of the form. Sample of the two instruction cards which cover all of the forms referred to in the following paragraph are attached hereto and made a part of this stipulation as Exhibits 2 and 3."

The various forms used are attached to the stipulation as Exhibits 1 to 14, inclusive; and to the petition filed in this Court, as Attachments 7 to 18, inclusive.[2] We will herein make reference to the attachment numbers.

Each of the forms, save No. 7 (an envelope) and No. 11a (the reverse of No. 11), contained among other statements one important sentence, referring to two matters—in which the second reference was at times enlarged. Thus, on each form appeared the words:

"The purpose of this card is to obtain information concerning a delinquent debtor, * * *"

and there then followed the words:

" * * * and to further advise that this is not connected in any way with the United States Government."

or

" * * * and to further advise that this is not connected in any way with any state or the United States Government." (Emphasis added.)

The reference to "with any state" was inserted in Attachments 8 and 14, after those forms quoted in a previous paragraph certain portions of the "State of New York Labor Law," or portions of the "State of Washington Revised Code," relating to Unemployment Compensation, respectively. Each had reference to the penalties prescribed by state law for the giving of false information, representation, or statements, or the withholding of material information with respect to the enforcement of such state laws.

2. They are correlated as follows:

| "Attachment" To Petition | Description | Return Address | Exhibit To Stipulation |
|---|---|---|---|
| 7 | Envelope | None | 1 |
| 8 | (None) N.Y. Labor Law | Current Employment Records | 14 & 14a |
| 9 | Request for Location | Change of Address | 5 & 5a |
| 10 | Questionnaire | Current Employment Records | 10 & 10a |
| 11 | Disbursements | "Claimants Inf. Questionnaire" | 11 & 11a |
| 11a | Disbursements (reverse side) | | Unnumbered |
| 12 | (None) U.S. P.O. Form 22 | "Change of Address" | 6 & 6a |
| 13 | (None) | "Current Employment Records" | 9 & 9a |
| 14 | (None) Wash. Unemp. Comp. Law | "Change of Address" | 13 & 13a |
| 15 | Claimants Inf. Questionnaire | "Claimants Inf. Questionnaire" | 12 & 12a |
| 16 | 1962 Questionnaire | "Current Employment Records" | 7 & 7a |
| 17 | Questionnaire | "Current Employment Records" | 8 & 8a |
| 18 | Request for Information | "Change of Address" | 4 & 4a |

Stipulation Exhibits 2 and 3 were Instruction Forms to the Creditors or Collection Agencies purchasing Floersheim forms, and not included in Attachments.

Petitioner Federal Trade Commission objects—

(a) to the inclusion of the reference to state law penalties in Attachments 8 and 14;

(b) to the reference to U. S. Post Office Form 22 [3] in Attachment 12;

(c) to the position of the disclaimer paragraph set forth above, claiming it was "lost" in the other printed material;

(d) to the size of type used to print the disclaimer;

(e) to the "demanding nature" of certain peremptory language used in the forms;

(f) to the "official looking" printing used, causing the forms to appear to be Government forms;

(g) to the use of colored paper for Attachments 11 and 15, which make them look like "banker's" or "check" paper;

(h) to the demand for social security numbers; this making the forms "too official";

(i) to the form of Attachments 8 and 15, in that they resemble checks;

(j) to the language used in Attachment 11, i. e.,

1) the heading "Disbursements"

2) the phrase at the place below space for signature, "Disbursements Office";

(k) to the language used in Attachment 15, such as the heading "Claimants Information Questionnaire";

(*l*) to the mailing address used on the forms:

"748 Washington Bldg. Washington, 5, D. C."

(m) to the mailing of the cards from Washington, D. C.

Respondent counters with the suggestion that it would be difficult to express any more clearly the intent of the cease and desist order than by doing what he has here done, use the precise language of the order, which in paragraph one required respondent to represent "that the purpose for which the information is requested is that of obtaining information concerning delinquent debtors." Having stated specifically "the purpose of this card is to obtain information concerning a delinquent debtor," respondent could do no more *unless* he so printed or composed the card's form as to obscure, or hide, or weaken in some appreciable degree, the bald statement quoted. This was so done, urges the Federal Trade Commission, by placing such language in small type in the middle of larger paragraphs. "Not so," replies respondent, "this language appears in the instructions to the recipient or addressee in the same size type there used. What better position or place could be arranged?"

"Like the small print exclusions in an insurance policy," urges petitioner—"the average recipient would pay no attention to it!"

We cannot assume that which is clearly expressed in plain English language on any form sent to any literate recipient in this country would *not* be read, or *not* be understood. If that were true, no notice of any kind would be sufficient. It may be difficult to make the American public heed or read a printed statement of fact, but it is there so that all who look and read may know. It is in smaller print than some other words, but in the same size print as many others. In using this language, the respondent did exactly what the Federal Trade Com-

---

3. This reads:

"To have mail delivered to a new address file form 22, *order to change address*, which is available at any post office or any carrier, a written and signed order in a telegram is acceptable. The order or telegram must be sent by you, your agent, or the person in whose care the mail will be accepted. The old and new addresses must always be furnished. Mail addressed to persons for whom an *order to change address* is on file will be sent by the Post Office of original address to the new address." (Emphasis added.)

428

mission in its order asked him to do. If the Federal Trade Commission's order is insufficient, then that body should reopen proceedings and modify its order. But such modification procedure, or its advisability, is not now before us.

■ Nor are we impressed with the Federal Trade Commission's complaints that the forms used are too "official looking," or that the language used in them is peremptory in nature, or "too demanding," or that the paper used is of a color and design sometimes used on checks, or that the address to which the cards are to be mailed in Washington, D. C. assumes the government must be involved, or that the forms should not be originally mailed from that city. The short answer to these complaints is that the cease or desist order, as drawn, does not forbid such acts or use.

We cannot forbid an otherwise legitimate business from mailing its letters from the country's Capital, whether the sender lives or has his business there, or elsewhere.

■■ On the other hand, we cannot believe that the incomplete citations or references to state law, respecting penalties in Unemployment Insurance or Compensation matters, can be for any purpose other than to obscure the subsequent honest statement of purpose, and result in a vague explanation of purpose that does not "clearly reveal" the purpose of the inquiry and hence violates the order. We regard the reference to U. S. Post Office Form 22 as being in the same category.

■ Nor can we agree with respondent's interpretation of paragraph five of the cease and desist order that the semicolon at the end of the second line is meaningless—i. e., that the use of the name "Disbursements Office" is prohibited *only* when there is an additional representation, "directly or by implication that money has been deposited with them for persons concerned from whom information is requested."

But respondent asserts he will willingly drop the use of such terms as "Disbursements" and "Disbursements Office" if this court indicates such use violates the terms of our, and the Federal Trade Commission's order. It does and we do.

■ This is a charge of criminal contempt. The ordinary criminal rules of evidence apply. Western Fruit Growers v. Gotfried, 9 Cir., 1943, 136 F.2d 98; United States v. Goldfine, 1958, 169 F. Supp. 93. Intent must be proved beyond a reasonable doubt.

■ On the record before us, we cannot find the respondent guilty of contumacious conduct, wherein and whereby he intentionally, flagrantly, deliberately and recklessly violated the court's order. We find him not guilty of criminal contempt. Duffy v. Brody, 1957, 147 F. Supp. 897, 901.

We likewise hazard the hope that the respondent will take such a long step forward in voluntary compliance with the language and spirit of the order he is required to obey whether he likes it or not, that this seven year old litigation may be finally terminated, and will not be before us again.