The People of Puerto Rico, Plaintiff and Appellee, *v.* Antonio Marchány, Defendant and Appellant.

No. 9681. Argued March 19, 1943.—Decided March 31, 1943.

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

Doctor Antonio Marchany, at the direction of the district attorney, performed an autopsy on the body of Roque Pérez, who had died as the result of a bullet wound. At the trial of Ovidio Vélez for the alleged murder of Pérez, Marchany was a witness on behalf of the government. During his examination, Doctor Marchany testified that a bullet shown to him by the district attorney was not the bullet he had extracted from the body of Pérez. Doctor Marchany also testified that Pérez Segarra, a police chief who was present at the autopsy, had asked to see the bullet and, ignoring his request to return the bullet in order that the Doctor might deliver it to the district attorney, departed with it.

On the next day, while the murder trial was still in progress, the lower court, in a new case entitled, *The People of*

*Puerto Rico* v. *Antonio Marchany, Delito:*—contempt by perjury, issued the following order:

"WHEREAS, yesterday during the course of the original case of The People of Puerto Rico against Ovidio Vélez Hernández, pending before this court for the crime of murder in the second degree, Dr. Antonio Marchany appeared as a witness and took the oath to tell the truth before this court and after taking the said oath, willfully and apparently contrary to said oath, testified that a bullet shown to him by the district attorney was not the bullet which he extracted from the body of the deceased Roque Pérez when he performed the autopsy on the body of said deceased, in spite of the fact that Chief of Police Angel Pérez Segarra testified that the autopsy was performed in his presence and that there Dr. Marchany delivered to him the bullet which the doctor denies to be the same one, notwithstanding the fact that two more witnesses corroborated under oath Chief Segarra's testimony and the fact that he was present at the time of the autopsy and when the bullet was delivered to him;

"WHEREAS, the aforementioned testimony is about a fact essential to the result of this case and the presiding Judge is *prima facie* convinced that Dr. Antonio Marchany, after having taken an oath before this court to tell the truth, is apparently guilty of perjury, pursuant to the Act of March 9, 1911, to provide a summary punishment for perjury committed in open court and for other purposes;

"WHEREFORE, this court, *motu proprio*, orders the arrest of Dr. Antonio Marchany and furthermore orders that said Antonio Marchany appear before this court on May 9, 1941, at 2 P. M., to set forth the reasons he may have for not being punished for contempt of court, at which hearing he shall present his defense and the evidence he may have, in order that the case may be disposed of in accordance with the law. While trial is pending, the accused may post a bond of $500.00 for release pending trial."

Thereafter, Doctor Marchany was tried and convicted by the district court on the said charge of contempt by perjury. He has appealed from the judgment sentencing him to two months in jail.

The *Fiscal* of this court joins counsel for the defendant in asking that the judgment of conviction be reversed. The *Fiscal*, however, requests that a new trial be ordered, whereas the defendant prays that a judgment of acquittal be entered.

■■ The *Fiscal* concedes that the lower court committed fundamental error when, shortly before The People rested its case, the lower court ruled as follows:

". . . This is not a case in which there is a presumption of innocence, the presumption is of guilt in these cases of perjury. When the Judge issues the order, the law says that he has to be convinced that he has lied; consequently the presumption is of guilt."

Counsel for the defendant immediately took exception to the ruling of the court, asserting that "in every case the presumption is that the defendant is innocent until the contrary be proved."

No right is more fundamental under our law than the presumption of innocence in a criminal case. Unless the courts hold fast to this doctrine, one of the greatest bulwarks of our way of life will be menaced. See *People* v. *Plata,* 38 P.R.R. 80. The presumption obtains in a trial by court as well as in a trial by jury (1 Wharton's Criminal Evidence, §72, p. 87; *People* v. *Ward,* 239 N. W. 335 (Mich. 1931)). It attaches to a defendant in a trial for criminal contempt as in any other criminal cause. (*Michaelson* v. *United States,* 266 U. S. 42, 66.)

In ruling that a presumption of guilt existed in this type of case, the lower court was in effect holding that the moment the show cause order is issued, the case must be taken as already established against the defendant, and that it remains only to hear his defense, if any. Such an interpretation of the statute establishing the crime of perjury in open court would encounter grave constitutional difficulties. A witness, it must be remembered, is not on trial. If it is felt that he has testified falsely, he must be so accused and given a hearing at which all the testimony against him must be offered. In the instant case the trial court granted the hearing. But instead of requiring the prosecution to start afresh and to produce all the evidence required to convict the defendant, the lower court, under the misapprehension that a

*prima facie* case had already been made out against Doctor Marchany, announced that a presumption of guilt existed against the defendant and conducted the proceeding on the contempt charge as though it were part and parcel of the murder case, adverting to and taking into consideration evidence which had been adduced at the murder trial before a jury but which was not introduced at any time before the court sitting alone on the contempt charge. Indeed, the vice of the trial court's pronouncement that the defendant labored under a presumption of guilt became glaringly clear, when the court, during the trial, took into consideration evidence which it had heard in the murder case in which Doctor Marchany was not the defendant.

It is obvious that the lower court confused its two separate functions in cases of this type. When a witness is charged with contempt by perjury in open court, the court in issuing the show cause order may be compared to a committing magistrate who finds probable cause, or to a district attorney who files an information. But at the trial on such a charge, when the witness for the first time becomes a defendant, the prosecution must begin anew and produce all the evidence required to convict the defendant, who at all times during the course of the new proceeding has the benefit of the presumption of innocence. This has been made abundantly clear in a series of cases decided by this court. In *People* v. *Aquino,* 33 P.R.R. 247, we said, through Mr. Chief Justice del Toro, the following at p. 254:

"Considering the said Act as a whole, it may be observed that there are two instances in which the conscience of the judge should move and act. The first is when upon hearing the testimony at the trial the judge is satisfied that the witness is a perjurer. Then it is the duty of the judge *motu proprio* to order the arrest of the witness, setting a day for the hearing. The second is when after having so acted, the judge investigates the case on its merits by hearing the evidence for the defendant and also that for the prosecution. In order that the law may be constitutional the accused should be

informed of the charge clearly, the prosecution must offer evidence of the commission of the crime and the accused must be given an opportunity to defend himself, including his clear right to be confronted by the witnesses for the prosecution. The proceeding is summary, but every right should be equally secured.''

Most of the other errors assigned by the defendant were committed by the lower court as a consequence of its misconception of the scope of the statute setting up the crime in question and the function of the district court pursuant thereto. As was pointed out in the *Aquino* case at p. 255, ''The judge should not base the judgment on his first impression, which prompted him to begin the proceeding. Free from all prejudice he should proceed later to try the case on its merits, *independently and in accordance with the evidence then heard by him.*'' (Italics ours). Yet the district judge, in violation of this rule that the contempt hearing must be *de novo,* repeatedly drew on his memory as to the testimony at the murder trial instead of permitting counsel to develop the facts independently at the trial on the contempt charge. For example, when one Carrasquillo, who had been present when the autopsy was performed and the bullet extracted from the body of the decedent, was asked, on cross-examination by counsel for the defendant, the highly material question, if he had testified at the murder trial that the bullet had been marked for future identification, the trial judge, before the witness could reply, interposed with the statement ''he did not testify that it was marked''.

Similarly, the lower court severely curtailed the cross-examination of witnesses, particularly the examination of Pérez Segarra, the principal witness for the prosecution, at times refusing to permit cross-examination on such vital matters as whether the bullet was marked for future identification and at times undertaking himself to reply for the witness, and giving as the replies information which the trial judge had apparently gleaned from presiding at the murder trial.

The trial judge also converted himself into a witness on several occasions. For example, when the district attorney was being cross-examined by counsel for the defendant, he was asked: "Does the witness assert that the Doctor did not see that bullet the day of the trial?" Before he could reply, the court interpolated the following comment: "The court has knowledge of that: He said: 'This is not the bullet', without examining it, and that induced me to issue the order."

The story of Dr. Marchany was quite different as to this episode. He testified that while he was on the stand at the murder trial, he had a clear view of the bullet while it was on a table near him and while the district attorney was holding it in his hand, and had ample opportunity to examine it carefully, before he was asked if it was the bullet he had extracted from Pérez's body. It is difficult to see how Doctor Marchany could get a fair trial from a judge who undertakes himself to testify in a case, and whose testimony is in conflict with that of the defendant.

The trial court fell far short of the test enjoined upon it in the *Aquino* case, whereby it must free itself of all preconceived notions of the guilt of the defendant, and conduct a trial *de novo* in a detached and impartial manner. Examples of the lower court's violations of this rule permeate the entire record. It would extend this opinion unduly to note them all. We content ourselves with citing the aforesaid typical examples.

It is also evident that the district court had prejudged this case before the trial began. This was manifested, among other things, by its frequent references to the appeal to this court, which could occur only in the event of conviction. We are not to be understood as holding that the mere fact that a lower court has in mind the possibility of appeal constitutes error. On the contrary, it is the duty of the district court to have the record made in such a manner that the right of

appeal is effectively preserved. But here the trial court, as the *Fiscal* of this court concedes, went much further. The announcement at the start that the defendant was presumptively guilty, the setting in which the trial judge discussed the appeal, which he indicated on many occasions would be taken, and the manner in which he insisted on developing the facts, all show that he himself felt he was only going through the empty formality of giving the defendant an opportunity of refuting, if he could, the imputation of guilt, of which the trial court was already convinced.

We are not unmindful of the evils and special circumstances which prompted the Legislature to provide for the crime of contempt by perjury in open court. See *People* v. *Aquino, supra.* It is a powerful prosecutive weapon which the government and the courts can and should use effectively. But a laudable determination to maintain the integrity of the procedure of the courts must not degenerate into trial by fiat. The fact that this is a summary procedure does not enable the courts to dispense with the constitutional requirement that a defendant shall be confronted with the witnesses against him at his trial, i. e., at the trial on the contempt charge. The Legislature, in making the judge in effect both prosecutor and court, imposed upon him a delicate task. If he feels unequal to the task in a particular case, he should arrange for trial thereof by another judge.

The defendant also contends that the show cause order did not set up facts sufficient to charge the crime of contempt by perjury in open court. While the order was written in somewhat periphrastic language, we are satisfied that the essential elements of the offense charged.can be gathered from the four corners of the order. We should therefore be disposed to reverse the judgment and remand the case for a new trial, except for an error which, although not assigned or discussed by the defendant, is so serious that it compels us to enter a judgment acquitting the defendant.

Section 1 of Act No. 41, Laws of Puerto Rico, 1911, as found on p. 68 of our Penal Code, 1937 ed., in defining the crime of contempt by perjury in open court, provides, as in all perjury statutes, that the defendant must falsely state as true ''any material matter''. The lower court was aware of this requirement. Its show cause order recited that ''The aforesaid testimony is about a fact essential to the result of the case . . . ''. Nevertheless, there was a complete failure of proof at the trial on the contempt charge as to the materiality of the testimony of Doctor Marchany at the murder trial in connection with the identification of the bullet extracted by him from the body of the decedent. Here again the lower court may have felt that it was entitled to draw on its background of the testimony taken at the murder trial. But to permit such a practice would, in addition to what has already been said herein, destroy the defendant's right of appeal. ''The law expressly grants an appeal. How could the appellate court form an opinion if the trial judge reserved in his own conscience the evidence considered by him and not made known to the appellate court?'' (*People* v. *Aquino,* 33 P.R.R. 247, 55.)

The defendant is entitled to have this, and all the other questions involved herein, decided on the record which was taken in the contempt case and which is the only record before us. It was therefore the duty of the government to introduce at the contempt trial evidence tending to show the materiality of this portion of Doctor Marchany's testimony. This was not done. There is nothing in the record which shows affirmatively the materiality of the testimony in question. If, for example, the murder case was tried on the theory of self-defense, identification of the bullet might have been wholly immaterial. We have no way of knowing the facts, and are not entitled to speculate as to the possibilities. Since the facts as adduced at the trial on the contempt charge

are as consistent with innocence as they are with guilt, we have no choice but to decree the acquittal of the defendant.

The judgment of the district court sentencing the defendant to two months in jail will be reversed, and a new judgment acquitting the defendant will be entered.

Mr. Justice Todd, Jr., did not participate herein.